# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-70021

United States Court of Appeals
Fifth Circuit

**FILED**

March 27, 2017

Lyle W. Cayce
Clerk

RICK ALLEN RHOADES,

        Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

        Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, HAYNES, and GRAVES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Rick Allen Rhoades murdered two men on September 12, 1991. Roughly one month later, while in custody for burglarizing a school, he confessed to the murders. A Harris County jury convicted him of capital murder and sentenced him to die. The Texas Court of Criminal Appeals ("CCA") affirmed Rhoades's conviction and sentence on direct appeal.[1] He unsuccessfully petitioned a Texas state court for a writ of habeas corpus.[2] Having exhausted his state

---

[1] *Rhoades v. State*, 934 S.W.2d 113 (Tex. Crim. App. 1996).

[2] *Ex parte Rhoades*, No. WR-78,124-01, 2014 WL 5422197 (Tex. Crim. App. Oct 1, 2014).

No. 16-70021

remedies, Rhoades petitioned a federal district court for federal habeas corpus relief. The district court rejected all of Rhoades's claims and declined to issue a certificate of appealability ("COA"). He now asks this court for a COA to appeal the district court's resolution of his claims. We will grant a COA in part.

**I.**

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal."[3] Federal law requires that he first obtain a COA.[4] A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."[5] Until the applicant secures a COA, we may not rule on the merits of his case.[6]

> The COA inquiry . . . is not coextensive with a merits analysis. At the COA stage, the only question is whether the applicant has shown that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." This threshold question should be decided without "full consideration of the factual or legal bases adduced in support of the claims." "When a court of appeals sidesteps [the COA] process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction."[7]

We limit our examination "'to a threshold inquiry into the underlying merit of [the] claims,' and ask 'only if the District Court's decision was debatable.'"[8]

---

[3] *Buck v. Davis*, No. 15-8049, 2017 WL 685534, at *11 (U.S. February 22, 2017).

[4] 28 U.S.C. § 2253(c)(1).

[5] *Id.* § 2253(c)(2).

[6] *Buck*, 2017 WL 685534, at *11 (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).

[7] *Id.* (citations omitted).

[8] *Id.* (quoting *Miller-El*, 537 U.S. at 327, 348).

No. 16-70021

"Where the petitioner faces the death penalty, 'any doubts as to whether a COA should issue must be resolved' in the petitioner's favor."[9] When the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[10]

## II.

Rhoades seeks a COA on five claims for federal habeas relief:

(1) that the convicting court unconstitutionally prevented him from presenting mitigating childhood photographs of himself to the jury during the sentencing phase;

(2) that the convicting court unconstitutionally permitted the jury to hear testimony about the possibility of release on furlough for capital defendants sentenced to life in prison;

(3) that the convicting court unconstitutionally prevented him from informing the jurors about the parole implications of a life sentence;

(4) that his trial counsel provided constitutionally ineffective assistance by failing to object to (a) comments by the prosecutor supposedly implicating Rhoades's right not to testify and (b) the guilt/innocence-phase discussion of Rhoades's extraneous offenses; and

(5) that the State violated *Batson* when it exercised racially motivated peremptory strikes against two prospective jurors.

We will grant a COA on Rhoades's claims 1, 2, and 5, but deny a COA on his claims 3 and 4.

### 1.

---

[9] *Allen v. Stephens*, 805 F.3d 617, 625 (5th Cir. 2015) (quoting *Medellin v. Dretke*, 371 F.3d 270, 275 (5th Cir. 2004)).

[10] *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No. 16-70021

Rhoades's first claim is that the convicting trial court unconstitutionally prevented him from presenting mitigating childhood photographs of himself to the jury during the sentencing phase of his trial. During sentencing, the defense's theory was that Rhoades was generally nonviolent and would do well in a prison environment. Rhoades called his adoptive mother to testify about his troubled childhood. Prior to her testimony, the defense offered into evidence eleven photographs depicting a young Rhoades doing normal, happy childhood things (like fishing, holding a trophy, and going to a dance). The trial court excluded the photographs as irrelevant.

The CCA affirmed.[11] It said that Rhoades had no constitutional right to introduce the photographs because they were not relevant to Rhoades's moral blameworthiness for the murders, relying on Justice O'Connor's concurring opinion in *Franklin v. Lynaugh*.[12] Judges Clinton and Overstreet dissented, pointing out that the relevant-to-moral-blameworthiness standard embraced by the CCA majority had never been adopted by the Supreme Court in a majority holding.[13] They further observed that *Skipper v. South Carolina* seems to say that mitigating evidence can be relevant even when it does not touch on the defendant's culpability for the crime committed.[14] Those dissenting judges would have found that Rhoades had a constitutional right to introduce the photographs "even if the only purpose of their introduction was to solicit the mercy of the jury."[15]

Rhoades contends on federal habeas that the state court unreasonably applied the Supreme Court's standard for what mitigating evidence capital

---

[11] *Rhoades*, 934 S.W.2d at 125-26.

[12] *Id.* at 126 (quoting 487 U.S. 164, 184 (1988) (O'Connor, J., concurring in the judgment)).

[13] *Id.* at 130-31 (Clinton, J., dissenting).

[14] *Id.* at 131 (citing 476 U.S. 1 (1986)).

[15] *Id.*

defendants have a right to present to the jury. The district court analyzed the Supreme Court's jurisprudence in this area and found that it permitted state courts "to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense."[16] According to the district court, the state court could have reasonably applied that standard to find the photographs irrelevant, and in any event the exclusion of the photographs did not affect Rhoades's sentence, rendering any error harmless.

Persuaded that Rhoades has made a substantial showing of the denial of a constitutional right, we grant a COA on this claim. In particular, we note the challenge of determining what information is "relevant to the sentencing decision" within the meaning of the Supreme Court's cases[17]—a challenge that divided the Texas CCA on this issue. "When a state appellate court is divided on the merits of the constitutional question, issuance of a certificate of appealability should ordinarily be routine."[18] A COA is granted on Rhoades's claim 1.

## 2.

Rhoades's second claim is that the State presented false or misleading sentencing evidence. During the sentencing phase of Rhoades's trial, the State put on testimony that Texas inmates convicted of capital murder but sentenced to life imprisonment are "eligible for furloughs"—the theory apparently being that the jury would be more likely to sentence Rhoades to death if it thought that sentencing him only to life imprisonment meant that he could take furloughs. Defense counsel objected, and the trial judge called for a bench

---

[16] *Lockett v. Ohio*, 438 U.S. 586, 604 n.12 (1978).

[17] *Kansas v. Marsh*, 548 U.S. 163, 175 (2006) ("In aggregate, our precedents confer upon defendants the right to present sentencers with information relevant to the sentencing decision and oblige sentencers to consider that information in determining the appropriate sentence. The thrust of our mitigation jurisprudence ends here.").

[18] *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011).

conference to which the court reporter was evidently not invited; the record does not show what counsel said at the bench. At some point, the court reporter was summoned to the bench, whereupon defense counsel wrapped up his argument and the judge overruled any objection, noting "I don't know where your objection is in there."

Rhoades raised this point on his direct appeal to the CCA, but it found the objection not preserved because "he failed to object to the line of questioning with ample specificity to notify the trial court of his contention."[19] Because the CCA held any objection to the furlough testimony defaulted, it did not reach the merits.[20] Rhoades nonetheless raised this claim on state habeas. The state habeas court recognized that the CCA's procedural ruling barred Texas habeas review, but went on to rule, in the alternative, that "the applicant fails to show that such claims have merit." On federal habeas, the district court avoided the procedural-bar issue, choosing instead to reject this claim on the merits.

Rhoades seeks a COA to challenge the district court's determination that his challenge to the furlough testimony lacks merit. Texas maintains that the claim is both procedurally barred and should be rejected on the merits. We grant a COA for both the merits and procedural issues.

*Merits*

Capital defendants have the constitutional right to reliable sentencing proceedings,[21] which precludes the State from presenting false or misleading

---

[19] *Rhoades*, 934 S.W.2d at 127.

[20] *Id.*

[21] *See California v. Ramos*, 463 U.S. 992, 998-99 (1983) ("[T]he qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination.").

evidence to the sentencing jury.[22] The merits issue is whether the state court's factual finding that the furlough testimony was *not* false or misleading was "an unreasonable determination of the facts."[23] We presume that finding to be correct, and Rhoades bears the burden of rebutting it by clear and convincing evidence.[24]

In support of this claim, Rhoades has offered evidence that, notwithstanding the nominal rule permitting Texas inmates serving a life sentence for capital murder to go on furlough, it was the *de facto* policy of the Texas Department of Criminal Justice ("TDCJ") not even to consider such inmates for any type of furlough. This evidence includes the affidavit of a TDCJ officer saying as much and the fact that at the time of Rhoades's trial, no Texas inmate serving a life sentence for capital murder had *ever* been granted a furlough of the kind that they are supposedly eligible for.

We find that Rhoades has made a substantial showing of the denial of a constitutional right and grant a COA on the merits of this claim. Telling the jury that its giving Rhoades a life sentence would qualify him for furloughs in order to make it more likely to give him a death sentence, when in reality he would never be considered for a furlough, raises serious questions about the reliability of Rhoades's sentencing determination.

*Procedural Bar*

The district court opted to reach the merits of Rhoades's furlough-testimony claim, but Texas insists that we should deny a COA because it is procedurally barred as a result of the CCA's holding. The unique procedural posture of this claim gives rise to some ambiguity. The Texas CCA denied it

---

[22] *See Caldwell v. Mississippi,* 472 U.S. 320, 328-29 (1985) ("[W]e conclude that it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been [misled.]").

[23] 28 U.S.C. § 2254(d)(2).

[24] *Id.* § 2254(e)(1).

solely on state procedural grounds, the contemporaneous-objection rule, and made no mention of the merits.[25] Then the state habeas court acknowledged the CCA's holding as a bar to state habeas review, but reached the merits anyway as an alternative holding.

"When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court."[26]

> State procedural bars are not immortal, however; they may expire because of later actions by state courts. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available.[27]

Here, it appears that the Texas CCA created a procedural bar to federal habeas review of Rhoades's furlough-testimony claim.[28] However, it is not clear whether the state habeas court's subsequently reaching the merits as an alternative holding "removes any bar to federal-court review that might otherwise have been available."[29] We grant a COA on this issue.

**3.**

Rhoades's third claim is that the trial court unconstitutionally prevented him from informing the jury, if it sentenced him to life in prison instead of death, how long he would be imprisoned before becoming eligible for parole. In Texas at the time that Rhoades was convicted and sentenced, inmates

---

[25] *Rhoades*, 934 S.W.2d at 127.

[26] *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977)).

[27] *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989)).

[28] *See Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999) (stating that Texas's contemporaneous-objection rule is an "independent and adequate state-law procedural ground sufficient to bar federal court habeas review of federal claims" (quoting *Amos v. Scott*, 61 F.3d 333, 345 (5th Cir. 1995))).

[29] *See Ylst*, 501 U.S. at 801.

## No. 16-70021

convicted of capital murder but sentenced to life imprisonment would be eligible for parole after thirty-five years.[30] Prior to jury selection, the State moved in limine to prevent Rhoades from informing the jury of that fact—the theory being that the jury might feel more comfortable imposing a life sentence if the defendant's incarceration were guaranteed for thirty-five years. The trial court granted that motion. Rhoades's jury never knew about the parole implications of choosing a life sentence over a death sentence.

On direct appeal, the Texas CCA affirmed based on state precedent.[31] Judge Overstreet dissented, penning a thorough analysis of why the CCA's ruling misapplied federal law.[32] The district court rejected this challenge on the merits. It noted that several capital habeas petitioners prior to Rhoades had made the same argument for the extension of *Simmons* to Texas's pre-2005 parole eligibility scheme,[33] but that the Fifth Circuit rejected them all.

The Supreme Court said in *Simmons v. South Carolina* that when a capital defendant sentenced to life in prison will *never* be eligible for parole under state law, the jury must be informed of that fact.[34] Rhoades seeks to extend that reasoning to Texas's parole scheme as it existed at the time of his conviction, which forbade parole for thirty-five years for capital defendants sentenced to life in prison. Rhoades's argument is foreclosed by circuit precedent. In *Kinnamon v. Scott,* the habeas petitioner "assert[ed] constitutional error in his inability to argue to the jury in sentencing that if spared the death penalty [he] would be required to serve a minimum of 20

---

[30] *Rhoades*, 934 S.W.2d at 128.

[31] *Id.* (citing *Smith v. State*, 898 S.W.2d 838 (Tex. Crim. App. 1995) and *Broxton v. State*, 909 S.W.2d 912 (Tex. Crim. App. 1995)).

[32] *Id.* at 131-44 (Overstreet, J., dissenting).

[33] In 2005, Texas eliminated the possibility of parole for capital defendants sentenced to life in prison. Tex. Code. Crim. P. art. 37.071 § 2(g).

[34] 512 U.S. 154, 162-64 (1994).

calendar years without good time before becoming eligible for parole."[35] He "rest[ed] this claim upon *Simmons v. South Carolina*," just as Rhoades does.[36] We said "we would not extend *Simmons* beyond cases in which the sentencing alternative to death is life without parole."[37]

Because Rhoades's claim 3 challenge is foreclosed, jurists of reason would not debate the district court's resolution of it. We deny a COA on claim 3.

**4.**

Rhoades's fourth claim is that he was denied effective assistance of trial counsel. To demonstrate a claim of ineffective assistance of trial counsel under *Strickland v. Washington*, the defendant must show both that counsel rendered deficient performance and that counsel's actions resulted in actual prejudice.[38] To demonstrate deficient performance, the defendant must show that, in light of the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms."[39] There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[40] Trial counsel's strategic decisions must be given a strong degree of deference.[41] On habeas review, if there is any "reasonable argument that counsel satisfied *Strickland*'s deferential standard," the state court's denial must be upheld.[42] Therefore, the question is whether jurists of

---

[35] 40 F.3d 731, 733 (5th Cir. 1994).

[36] *See id.*

[37] *Kinnamon*, 40 F.3d at 733. *See also Montoya v. Scott*, 65 F.3d 405, 416-17 (5th Cir. 1995).

[38] 466 U.S. 668, 687 (1984).

[39] *Id.* at 687-88.

[40] *Id.* at 689.

[41] *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).

[42] *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

reason would debate the district court's resolution of this claim in light of these standards.

To demonstrate prejudice under *Strickland*, Rhoades must show that counsel's deficient performance was "so serious as to deprive [him] of a fair trial, a trial whose result is reliable."[43] This requires the showing of a reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different.[44] Rhoades alleges two instances of ineffectiveness: first, in failing to object to a portion of the prosecutor's closing argument that he claims was an impermissible comment on his failure to testify; and second, in failing to object to other-bad-act evidence during the guilt/innocence phase of trial.

*Comment on Failure to Testify*

Rhoades did not testify at trial. During the prosecutor's closing argument, she said:

> When you talk about whether one intentionally killed, it doesn't mean he had to enter that house with the intent to kill. In fact, I mean, why he went into the house? Why he killed those two young men? I know we would all love to know. Ask Mr. Stafford to tell you why he would do a thing like that.

"Mr. Stafford" was Rhoades's trial defense counsel. Counsel did not object that the prosecutor's comment was an impermissible reference to Rhoades's failure to testify.[45]

Rhoades argued in his state habeas application that his trial defense counsel's failure to object that those comments were an impermissible reference to his failure to testify constituted ineffective assistance of trial

---

[43] *Strickland*, 466 U.S. at 687.

[44] *Id.* at 694.

[45] Defense counsel did object that some of the statements were unsupported by the evidence, but that objection was overruled.

No. 16-70021

counsel, but the state habeas court denied that claim. The district court found that the prosecutor's comment was not a comment on Rhoades's failure to testify, so Rhoades's trial counsel was not ineffective for failing to have objected to it.

"[T]he Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."[46] "[T]he test for determining whether the prosecutor's remarks were constitutionally impermissible is: (1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence."[47] Rhoades does not rely on the first prong of that test, opting instead to argue that the prosecutor's "ask Mr. Stafford to tell you" comment would naturally and necessarily be construed by the jury as a comment on the defendant's silence.

Rhoades has not made a substantial showing of the denial of a constitutional right on this portion of his ineffective-assistance-of-counsel claim. Counsel is not ineffective for failing to raise an unmeritorious objection. The prosecutor's argument explicitly referred to and invited defense *counsel* to respond to her challenge, not Rhoades himself. This rhetorical flourish does not foul the Fifth Amendment.[48] Rhoades has presented us with no colorable argument that the jury would *naturally* and *necessarily* construe the remark as a comment on Rhoades's failure to testify. We deny a COA on this portion of Rhoades's ineffective-assistance-of-counsel claim.

Other-Bad-Act Evidence

---

[46] *Griffin v. California*, 380 U.S. 609, 615 (1965).

[47] *United States v. Bohuchot*, 625 F.3d 892, 901 (5th Cir. 2010) (quoting *United States v. Grosz*, 76 F.3d 1318, 1326 (5th Cir. 1996)).

[48] *Rivera v. Collins*, 934 F.2d 658, 661 (5th Cir. 1991).

12

A month after Rhoades committed the murders for which he was convicted, he was arrested for burglarizing a school. While in custody for that offense, he confessed to the murders. During that confession, Rhoades also detailed other crimes and bad acts, such as other burglaries and auto thefts. Defense counsel did not object to the references to Rhoades's burglarizing a school or prior burglaries and auto thefts. In fact, defense counsel specifically told the prosecutor and the trial court that he was taking a "let it all hang out approach," with no intent to object to any of the prior acts.

Rhoades argued in his state habeas petition that failure to object to these other bad acts was ineffective assistance of counsel. Rhoades's trial counsel submitted affidavits in which they explained that their primary trial strategy was to save Rhoades's life.

> Not only did we not object to this [other-bad-act] evidence, we told the jury of these facts in our opening statement. As previously stated, from the outset this was primarily a case to save [Rhoades's] life. Our prominent focus was on punishment. As a part of the trial strategy, we decided to let the jury know of these very aggravating facts early on in an attempt to "de–sensitize" them. We feared that if this information was heard for the first time at punishment, that the jury would find it difficult to give proper weight to all of our punishment evidence and would be so incensed that the death penalty would be nearly automatic. We had put substantial time and energy into developing evidence of [Rhoades's] tortured background, his medical, brain abnormality and the fact that he was non–violent in prison. We felt that if the jury learned of his prior arrest and parole immediately prior to our evidence, that this mitigation evidence would fall on deaf ears. In retrospect, I stand by that decision.

Under Texas Rule of Evidence 404(b), "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The State here admits that the other-bad-act evidence was perhaps objectionable

under TRE 404(b), but points out the reasonableness of counsel's trial strategy not to object to the evidence and allow the jury to hear it early.

Rhoades has not made a substantial showing of the denial of a constitutional right on this portion of his ineffective-assistance-of-counsel claim. Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is "doubly deferential" because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).[49] "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[50]

> Counsel . . . may reasonably decide to focus on the trial's penalty phase, at which time counsel's mission is to persuade the trier that his client's life should be spared. Unable to negotiate a guilty plea in exchange for a life sentence, defense counsel must strive at the guilt phase to avoid a counterproductive course.[51]

Rhoades presents us with no colorable argument that the state court's finding defense counsel's trial strategy reasonable was unreasonable. We also deny a COA on this portion of Rhoades's ineffective-assistance-of-counsel claim.

**5.**

Rhoades's fifth and final claim is that the prosecutor violated *Batson* by using peremptory strikes against two black jurors. Rhoades himself is white, but the defendant need not be in the same protected class as stricken jurors to raise *Batson*.[52] Under the rule established by *Batson v. Kentucky*, peremptory strikes may not be racially motivated.[53] Proof of a *Batson* violation proceeds in three steps: first, the defendant must make a prima facie case of racial

---

[49] *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

[50] *Strickland*, 466 U.S. at 690.

[51] *Florida v. Nixon*, 543 U.S. 175, 191 (2004).

[52] *Powers v. Ohio*, 499 U.S. 400, 410-16 (1991).

[53] 476 U.S. 79, 85 (1986).

discrimination in connection with the prosecutor's use of a peremptory strike.[54] Then the burden shifts to the State to come forward with a race-neutral explanation for exercising the strike.[55] The prosecutor's explanation "need not rise to the level justifying exercise of a challenge for cause."[56] Finally, the burden shifts back to the defendant to "establish[] purposeful discrimination."[57]

At the third step, the defendant may rely on "all relevant circumstances" to show purposeful discrimination.[58] "[T]he critical question in determining whether a prisoner has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike. At this stage, 'implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.'"[59]

A state court's *Batson* ruling is a finding of fact that we afford a presumption of correctness unless the petitioner rebuts it with clear and convincing evidence.[60] Therefore, the question is whether jurists of reason would debate the district court's resolution of this claim in light of these standards. Rhoades challenges his prosecutor's use of peremptory strikes with respect to two potential jurors: Berniece Holiday and Gregory Randle.

*Berniece Holiday*

One of Rhoades's prospective jurors was Berniece Holiday, a black woman. The prosecutor exercised one of her peremptory strikes to dismiss Ms.

---

[54] *Id.* at 96-97

[55] *Id.* at 97. When the state trial court called on the government to provide race-neutral justifications, we assume that the defendant satisfied his or her initial burden. *United States v. Webster*, 162 F.3d 308, 349 (5th Cir. 1998).

[56] *Batson*, 476 U.S. at 97.

[57] *Id.* at 98.

[58] *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Batson*, 476 U.S. at 96-97).

[59] *Miller-El v. Cockrell*, 537 U.S. 322, 338-39 (2003) (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)).

[60] 28 U.S.C. § 2254(e)(1); *Hernandez v. New York*, 500 U.S. 352, 366 (1991).

No. 16-70021

Holiday, then Rhoades immediately objected under *Batson*. The trial court found that Rhoades could not establish a prima facie case of racial selection, but ordered the State to offer race-neutral reasons for striking the prospective juror anyway "[o]ut of an abundance of caution."

The prosecutor offered several race-neutral reasons for using her strike. As summarized by the Texas CCA on direct appeal:

> (a) Holiday "dozed off" during the State's group voir dire examination; (b) Holiday's answers were very succinct, in a way which demonstrated a lack of candor; (c) Holiday only answered three of seventeen questions on a particular page of her juror questionnaire; (d) Holiday's facial expressions led the prosecutor to believe that she was saying what she believed the prosecutor wanted to hear; (e) Holiday was an elementary school teacher and might identify too closely with evidence of [Rhoades]'s difficult childhood; (f) Holiday indicated, with a tone of pride, that, while previously serving on a jury, she "set free" the defendant; (g) Holiday had a first cousin who was in prison.[61]

After giving the defense a chance to respond, the trial court denied the *Batson* challenge. The Texas CCA affirmed, saying that "Appellant's showing of purposeful discrimination was minimal[,] [t]he State's race-neutral explanations were not whimsical, . . . and the record does not reflect that the State demonstrate a disparate pattern of strikes against any suspect class."[62] The district court ruled: "Given the numerous race-neutral reasons proffered by the State, Rhoades' weak showing of disparate questioning, and the absence of any meaningful evidence of discriminatory intent, the Court finds that Rhoades has not met his AEDPA burden with regard to Ms. Holiday."

We are persuaded that Rhoades has made a substantial showing of the denial of a constitutional right in connection with the strike of this prospective

---

[61] *Rhoades*, 934 S.W.2d at 124.
[62] *Id.*

juror. Rhoades cites significant evidence that Ms. Holiday was a strong juror for the prosecution, but that she was treated differently than the white jurors questioned before her. She said that she was "strongly in favor of the death penalty." Rhoades points out that the prosecutor questioned her more extensively than the previous, white jurors. He also notes that the prosecutor's proffered race-neutral reasons for striking Ms. Holiday are unsupported by the record. We find this claim at least debatable, and we grant a COA.

*Gregory Randle*

The prosecutor also exercised one of her peremptory strikes against Gregory Randle, a black man, and Rhoades again objected under *Batson*. The trial court asked the prosecutor to state her race-neutral reasons for exercising the strike, and she did so. As summarized by the Texas CCA on direct appeal:

> (a) Randle had a brother in prison, and although Randle had visited him recently, Randle professed that he did not know what crime his brother committed. The prosecutor professed that she was concerned Randle was being disingenuous, and down-playing the effect his relationship with his brother would have on him; (b) Randle vacillated on the kind of evidence he would require to find future danger. Although this vacillation was not legally sufficient to subject Randle to a challenge for cause, he nevertheless occasionally articulated that he would prefer evidence of past violent behavior to find future danger (the State had no evidence of past violent behavior); (c) Randle indicated during voir dire that he thought the death penalty was wrong, although he conceded that it might be necessary for some crimes.[63]

The trial court found that the prosecutor had struck the prospective juror for race-neutral reasons. The Texas CCA affirmed.[64] The federal district court concluded that "Rhoades has not shown that the state courts were unreasonable in their assessment of the State's peremptory strike against

---

[63] *Id.* at 124-25.
[64] *Id.* at 125.

Gregory Randle." We are persuaded that Rhoades has made a substantial showing of the denial of a constitutional right. Like Ms. Holiday, Mr. Randle articulated a pro-prosecution perspective. He said he would not insist on evidence of motive to impose a death sentence. The prosecutor cited, as one of her race-neutral reasons for striking Mr. Randle, that he had a brother in prison; but other white jurors who went unchallenged by the State also had family members in prison. Rhoades also points out that Mr. Randle never actually made one of the statements that the prosecutor cited as a reason for striking him. Taken together, we find this evidence to be a substantial showing of the denial of a constitutional right under *Batson*. We grant a COA.

## III.

In sum, we grant a COA on Rhoades's claims 1, 2, and 5 for habeas relief involving the exclusion of mitigating photographs, the admission of furlough testimony, and two *Batson* challenges. We deny a COA on Rhoades's claims 3 and 4 involving ineligibility for parole and ineffective assistance of counsel.