# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50112

United States Court of Appeals
Fifth Circuit

**FILED**

April 22, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

REYMUNDO VILLARREAL-ARELIS, also known as Mundo, also known as Raymundo Villarreal, also known as Reymundo Villarreal, also known as Reymundo Arelis-Villarreal,

      Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:16-CR-254-3

Before WIENER, GRAVES, and WILLETT, Circuit Judges.

PER CURIAM:*

Appellant Reymundo Villarreal-Arelis appeals from the district court's final judgment, arguing that his trial lawyer did not effectively represent him as a result of a conflict of interest in violation of the Sixth Amendment; the prosecutor's closing rebuttal argument at trial improperly shifted the burden of proof to Appellant in violation of the Fifth Amendment; and the district court

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50112

imposed limitations on cross-examination in one instance, which denied Appellant the right to properly confront a witness in violation of the Sixth Amendment.  We DECLINE to resolve Appellant's ineffective-assistance-of-counsel claim on direct appeal and, otherwise, AFFIRM.

## BACKGROUND

Appellant was charged with two counts, respectively, conspiracy to possess with intent to distribute cocaine and conspiracy to launder monetary instruments.  The indictment charged fifteen other individuals and five corporate defendants with various drug and money-laundering offenses.

Underlying the charges were allegations that Appellant, members of his family, and others—known as "Los Piojos"—transported and smuggled cocaine into the United States from Mexico and then distributed the illicit drug.  Los Piojos moved both their own drugs and the drugs of others, including the Gulf Cartel.  The Gulf Cartel, in turn, hired former Mexican Special Forces soldiers to protect their drugs and drug smuggling routes.  These soldiers were collectively known as "Los Zetas."  The government contended that Appellant and other Los Piojos members laundered drug proceeds through, in part, the buying and selling of racehorses.

After Appellant's attorney Guy L. Womack entered his notice of appearance, the government advised him that his prior representation of a possible government witness—Fernando Garcia-Solis—presented a potential conflict of interest.[1]  Subsequently, Womack moved for a hearing pursuant to Federal Rule of Criminal Procedure 44(c) to inquire into the possible conflict of interest.

---

[1] Womack represented Garcia-Solis in connection with his trial and conviction for conspiracy to launder money in *United States v. Solis-Garcia*, No. 1:12-cr-00210-SS-7 (W.D. Tex.).  The parties refer to the trial in *Solis-Garcia* as the "Austin trial," and so do we.  Garcia-Solis's conviction and sentence were affirmed in *United States v. Cessa*, 785 F.3d 165, 187, 189 (5th Cir. 2015).

No. 18-50112

The district court discussed the conflict at a hearing and then, later, at a status conference. The district court concluded that Appellant waived any conflict. At the hearing, Magistrate Judge Pamela A. Mathy explained to Appellant that Womack's representation of him presented a possible conflict of interest. Nonetheless, Appellant told the district court that he wanted Womack to represent him regardless of any conflict. The government subsequently filed an advisory explaining that Womack's former client— Garcia-Solis—could benefit from testifying and included a sealed ex parte declaration setting forth how Garcia-Solis's testimony would inculpate Appellant. In response, Appellant proposed walling off Womack through an independent attorney who would handle all aspects of Garcia-Solis's testimony.

At the status conference, District Court Judge Xavier Rodriguez explained to Appellant that the potential conflict might affect Womack's ability to vigorously cross-examine the witness and discussed hiring an independent lawyer to cross-examine Garcia-Solis. Appellant told the district court four times that he understood that a potential conflict existed and that he wanted Womack to represent him anyway. The district court determined that Appellant "understands the potential for a conflict, waives that conflict, knowingly waives the conflict; by demeanor and his words, he fully understands what is going on, and so I will allow the continued representation by Mr. Womack."

After Appellant rejected the government's final plea offer, the government moved for an additional hearing regarding the possible conflict of interest. The government argued that the conflict had become actual and also required Garcia-Solis to waive the alleged conflict of interest after independent counsel had been appointed to inform Garcia-Solis of the alleged conflict. Later, the government moved to disqualify Womack. The government argued that—upon further consideration—waivers and appointment of independent

3

counsel would not suffice to resolve the alleged conflict and suggested that Womack's continued representation might violate Texas Disciplinary Rules of Professional Conduct. Appellant responded that he waived the conflict and decided not to plead guilty after reviewing all relevant discovery and receiving multiple briefings from the government about the government's proof.

Ultimately, Magistrate Judge Henry J. Bemporad appointed independent counsel to consult with Garcia-Solis. Garcia-Solis declined to waive any conflict that Womack's representation of Appellant posed. In his report and recommendation to the district court on the government's motion for an additional hearing and motion to disqualify Womack, Judge Bemporad stated that the possible violation of ethical rules did not require Womack's disqualification, the conflict would not become an actual conflict unless and until Garcia-Solis testified at trial, and Garcia-Solis's refusal to consent to Womack's representation of Appellant did not outweigh Appellant's right to counsel of his choosing. Judge Bemporad recommended that the government's motions be denied. It does not appear that the district court adopted this recommendation outright, but the district court orally denied the government's motion for a new hearing, effectively denying the motion to disqualify Womack. The district court further required Appellant to hire independent counsel to cross-examine Garcia-Solis should he testify at Appellant's trial. Appellant ultimately hired John A. Convery as independent counsel.[2] Nonetheless, Garcia-Solis never testified.

After a four-day jury trial, Appellant was found guilty on both counts. Relevant to this appeal are two incidents from the trial: First, the prosecutor's rebuttal argument, which followed Appellant's closing argument, in which the

---

[2] Appellant argues that Convery was also impermissibly conflicted: Convery represented Denis Winn, one of Appellant's codefendants.

No. 18-50112

prosecutor said that there was "no evidence" of any method other than drug trafficking by which Appellant could have accounted for certain expenditures. Second, the district court's limitation on Appellant's cross-examination of Jesus Enrique Rejon-Aguilar in one instance.[3]

The district court sentenced Appellant to 240 months' imprisonment on each count, to run concurrently, and issued a judgment of forfeiture in the amount of approximately $4.9 million. Appellant timely filed a notice of appeal directly from the district court's final judgment.

## STANDARD OF REVIEW

Each issue involves a different standard of review. First, "[a]s a general rule, Sixth Amendment claims of ineffective assistance of counsel cannot be litigated on direct appeal, unless they were adequately raised in the district court." *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). "Nevertheless, this court may consider a claim regarding competency of trial counsel if the record provides sufficient detail about the attorney's conduct to allow the court to make a determination of the merits of the claim." *United States v. Chavez-Valencia*, 116 F.3d 127, 133 (5th Cir. 1997) (collecting cases), *superseded by rule on other grounds as stated in United States v. Vasquez*, 899 F.3d 363, 372 (5th Cir. 2018).

Second, the Fifth Amendment forbids a prosecutor "from commenting directly or indirectly on a defendant's failure to testify or produce evidence." *United States v. Romero-Medrano*, 899 F.3d 356, 361 (5th Cir. 2018) (internal quotation marks and citation omitted). More generally, the Fifth Amendment forbids a prosecutor from commenting directly or indirectly on a defendant's silence. *Id.*; *see also Griffin v. California*, 380 U.S. 609, 615 (1965); *United*

---

[3] Rejon-Aguilar is a former Los Zetas member who spent about three months on a ranch controlled by Appellant's family, where Rejon-Aguilar met Appellant.

*States v. McMillan*, 600 F.3d 434, 452 (5th Cir. 2010). To determine whether a Fifth Amendment violation occurred, the court considers (1) whether the prosecutor made an impermissible remark and (2) whether the impermissible remark casts serious doubt on the correctness of the jury's verdict. *United States v. Murra*, 879 F.3d 669, 682–84 (5th Cir. 2018). The court reviews the first prong de novo and the second prong for abuse of discretion. *United States v. Bolton*, 908 F.3d 75, 93 (5th Cir. 2018).

Third, Sixth Amendment confrontation claims are generally reviewed de novo. *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008). However, when a defendant has not asserted such a claim below, the court reviews for plain error. *United States v. Acosta*, 475 F.3d 677, 680 (5th Cir. 2007). A defendant's Sixth Amendment confrontation right is satisfied where the defendant is allowed sufficient opportunity to test a witness' perceptions, memory, and credibility. *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974). To show a confrontation-right violation, Appellant must establish that "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense] counsel been permitted to pursue his proposed line of cross-examination." *Skelton*, 514 F.3d at 439–40 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)). "Once a court determines that a defendant's rights under the Confrontation Clause were violated, then it must determine whether the error was harmless beyond a reasonable doubt." *United States v. Jiminez*, 464 F.3d 555, 562 (5th Cir. 2006).

## DISCUSSION

First, Appellant's ineffective-assistance-of-counsel claim is unavailing on direct appeal. Appellant failed to raise the claim below, and the record is insufficiently developed to allow the court to determine the issue on the

merits.[4]  Accordingly, Appellant cannot litigate the issue in this appeal.  *See Chavez-Valencia*, 116 F.3d at 133.  Appellant remains free to pursue his ineffective-assistance-of-counsel claim in accordance with 28 U.S.C. § 2255. *See United States v. Wallace*, 32 F.3d 921, 930 (5th Cir. 1994); *cf. United States v. Salado*, 339 F.3d 285, 291–92 (5th Cir. 2003) (remanding the case for an "after-the-fact" hearing under Federal Rule of Criminal Procedure 44(c) to determine whether there was an actual conflict of interest); FED. R. CRIM. P. 44(c) (requiring that a court promptly inquire about "the propriety of *joint representation*" when, among other things, "two or more defendants have been *charged jointly* under Rule 8(b) or have been *joined for trial* under Rule 13," situations not present here) (emphases added).

Second, Appellant's Fifth Amendment claim is unavailing.  Appellant has not shown that the prosecutor made an impermissible remark—the first of two necessary prongs to make out a Fifth Amendment violation.  *See Murra*, 879 F.3d at 682–84.  Under the first prong, the court considers "(1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." *Rhoades v. Davis*, 852 F.3d 422, 432–33 (5th Cir. 2017).

Here, in his closing rebuttal argument, the prosecutor stated that Appellant and members of his family spent millions of dollars in connection with, among other things, the purchase of horses and two properties.  The prosecutor stated:

---

[4] Appellant effectively conceded at oral argument the government's position: that the record is not sufficiently developed regarding the ineffective-assistance-of-counsel claim. While Appellant ostensibly argued that the record is sufficiently developed for the court to determine the issue on direct appeal, he also represented that, among other things, it is unknown whether Garcia-Solis shared relevant confidential information with Womack.

No. 18-50112

There is no evidence of any other method by which the defendant could have accounted for those type of expenditures. There is no source of money other than the drug trafficking, and that's the evidence that you have here today—

Appellant's counsel objected, stating, "There is no burden on the defense to explain any expenditures or to bring in any expenditures." The court overruled the objection, stating, "The jury has already been instructed on that. You may continue." The prosecutor then stated:

The evidence that has been presented to you shows where the source of the money came from, ladies and gentlemen. I ask you to rely on the evidence that has been presented here in court over the last three or four days.

These rebuttal remarks appeared to address Appellant's closing argument, in which Appellant's counsel argued that there was no corroborating evidence linking Appellant to cash, properties, or cars in connection with the charges brought against Appellant.[5] Appellant's counsel also argued that horseracing could be highly profitable.

Appellant argues that the prosecutor "intended to convey to the jury that Appellant did not produce any evidence to disprove the Government's evidence" when the prosecutor stated that "[t]here is no evidence of any other method by which the defendant could have accounted for [certain] expenditures." Appellant does not argue that the character of the remark was such that the jury would naturally and necessarily construe it as a comment

---

[5] During the closing argument, Appellant's counsel stated:

You know for a fact there is not one fingerprint of Reymundo Villarreal, no DNA, not one phone call, none. No text messages, not a single e-mail. No one found drugs on him. No one found weapons on him or in his home. No forensic or scientific evidence or physical evidence. No piles of cash, no fancy house, no fancy car, no concealed compartment in his truck. Even his vehicle is financed. Look at all of the evidence and do what is right.

8

on the defendant's silence.    Accordingly, we consider only whether the prosecutor's manifest intent was to comment on the defendant's silence.

Appellant bears the burden of proving the prosecutor's intent. *United States v. Laury*, 985 F.2d 1293, 1303 (5th Cir. 1993).    The court views the prosecutor's remarks in the context of the trial. *Id.*; *see also United States v. Wharton*, 320 F.3d 526, 538 (5th Cir. 2003).    "If there is an equally plausible explanation for the remark, the prosecutor's intent is not manifest." *United States v. Green*, 324 F.3d 375, 382 (5th Cir. 2003) (internal quotation marks and citation omitted).    A remark that "no evidence" supports a fact in dispute is not necessarily improper. *See Romero-Medrano*, 899 F.3d at 362 (concluding, in a case involving distribution of child pornography, that a prosecutor's statement that "[t]here is no evidence as to why [the defendant's file-sharing settings] were changed" was an "argument[] regarding the reasonable inferences that [the jury] could draw from the evidence" instead of a comment that the jury would "naturally and necessarily construe" as one on the defendant's silence).    This is particularly true where a prosecutor's contested remarks were made in response to defense arguments, as here.    *See, e.g.*, *United States v. Stephens*, 571 F.3d 401, 408 (5th Cir. 2009) (concluding that prosecutor's remark that defendant had power to subpoena witnesses was not improper because defense counsel had referred to un-subpoenaed witnesses); *United States v. Palmer*, 37 F.3d 1080, 1086 (5th Cir. 1994) ("Rather than an impermissible shift of the burden of proof, these comments were a response to defense counsel's argument.").    Specifically, the prosecutor's contested rebuttal remark followed and appeared to address Appellant's closing argument, in which Appellant's counsel argued that there was no corroborating evidence linking Appellant to cash, properties, or cars in connection with the charges brought against him and that horseracing could be profitable.    Indeed, in his rebuttal argument, the prosecutor referred to "the evidence that you have here

today," and "the evidence that has been presented here in court over the last three or four days," to argue that "[t]he [presented] evidence . . . shows where the source of the money [for Appellant's expenditures] came from[, i.e., drug trafficking.]" Given this context, Appellant has not shown that the prosecutor's manifest intent was to comment on the defendant's silence when the prosecutor stated that there "is no evidence of any other method by which the defendant could have accounted for [Appellant's] expenditures." *Cf. Murra*, 879 F.3d at 682–84 (concluding that prosecutor's reference to defendant's choice not to testify evidenced a manifest intent to comment on silence). Accordingly, Appellant has not shown a Fifth Amendment violation.

Third, Appellant's arguments that the district court's imposition of limitations on cross-examination in one instance denied Appellant the right to properly confront Rejon-Aguilar in violation of the Sixth Amendment are unavailing.

Appellant did not object to the district court's actions with respect to the confrontation-right issue he raises. Thus, we proceed under plain error review. *See Acosta*, 475 F.3d at 680. Appellant has not shown any error. *See United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (stating that the first requirement for reversing a trial court under plain error review is "an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned") (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)) (brackets omitted).

In his direct testimony, Rejon-Aguilar stated that, as a member of Los Zetas, he engaged in kidnapping, torture and murder. He stated that he was ordered to murder about twenty people and that he ordered the murder of about ten other people. On cross-examination, the following exchange took place between Appellant's counsel and Rejon-Aguilar:

No. 18-50112

Q:    Among the people that you killed, of these 20 people or so
       you personally killed, some were women and children?

A:    No, sir.

Q:    They were women?

A.    No, sir.

Referring to the Austin trial, Appellant continued:

Q:    Do you remember testifying in Austin and said that you did
       kill women?

A:    No, sir.

Q:    If I were to show you your transcript from that trial, do you
       think you would recognize your words?

A.    Yes.  If I said it, yes.

Appellant's counsel then asked Rejon-Aguilar questions about other matters, specifically, Rejon-Aguilar's arrest in Mexico, statements he made on Mexican television about killing U.S. law enforcement agents, and his testimony on those topics in the Austin trial.  The government objected once to the form of impeachment, and then to relevance.  Afterward, Appellant's counsel returned to the subject of the murders:

Q:    With regards to the murders that you committed in Mexico,
       you testified that you killed men and that some women were
       killed?  And some women were killed?

A.    No, sir.

Appellant's counsel then asked the district court if he could show Rejon-Aguilar the Austin trial transcript[6]:

---

[6] Rejon-Aguilar's Austin trial testimony stated, in relevant part:

Q:    . . . [B]efore these people were murdered, were they tortured [sic] you
       were involved with?

A:    Before the agents were killed? I don't understand.

Q:    No. I'm talking about the other 30 or more people.

A:    Some.

Q:    And were you physically present when they were being tortured?

No. 18-50112

Mr. Womack:     Your Honor, again, if I can show him my transcript. This is the same transcript we were talking about earlier. And I will turn to page 82, and I will direct your attention to lines 5 through 13. If you will read those to him.

[Prosecutor]:     Judge, I'm going to make the same objection we made earlier.

The Court:     That is improper impeachment. Next question.

[] Mr. Womack:     Having had your testimony read to you here in court, does it refresh your recollection of what you said in that trial in Austin, Texas?

[Prosecutor]:     Judge, I don't think his recollection needs to be refreshed as to the subject matter of—

Mr. Womack:     He is denying saying it, Your Honor.

The Court:     No. It is consistent, Counsel. That is sustained. Next line of questions.

Appellant established through Rejon-Aguilar's cross-examination, among other things, that Rejon-Aguilar made false statements on Mexican television, kept $2 to $3 million in illegal proceeds, was never charged with murder in Mexico or the United States, and was testifying in the hope that his sentence would be reduced. Given this cross-examination testimony, Appellant has not shown that "a reasonable jury might have received a significantly different impression of [Rejon-Aguilar's] credibility had [defense] counsel been permitted to pursue his proposed line of cross-examination." *Van Arsdall*, 475 U.S. at 680.

---

A:     That's correct.

Q:     Both women and children—women and men?

A:     No. All men.

Q:     Were some women killed?

A:     Yes.

12

No. 18-50112

Accordingly, Appellant has failed to show a confrontation-right violation.[7]

## CONCLUSION

For the foregoing reasons, we DECLINE to resolve Appellant's ineffective-assistance-of-counsel claim on direct appeal and, otherwise, AFFIRM.

---

[7] The government addressed a second confrontation-right issue involving the district court's limitation of Appellant's cross-examination of Rejon-Aguilar regarding the factual basis of a guilty plea that Rejon-Aguilar had previously entered. However, Appellant never raised this issue and only mentioned the testimony regarding the guilty plea in his opening brief's statement of facts. *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived.").