United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 1, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————

No. 06-70004

———————————————

NEWTON ANDERSON,

Petitioner-Appellant,

versus

NATHANIEL QUARTERMAN,
Director, Texas Department of Criminal Justice, Correctional Institutions Division

Respondent-Appellee.

————————————————————————————

Appeal from the United States District Court
for the Eastern District of Texas
6:03-CV-171

————————————————————————————

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Before the court is an appeal of the denial of Newton Anderson's petition for writ of habeas

corpus brought pursuant to 28 U.S.C. § 2254, in which Anderson challenges his capital murder

conviction and death sentence. After denying relief, and although the eleven raised issues were easily,

and properly, disposed of by the district court, it entered a certificate of appealability with respect to

———————————

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

- 1 -

each of them.  We AFFIRM the district court's denial of the petition for writ of habeas corpus.

## I. FACTS AND PROCEEDINGS

Frank and Bertha Cobb were murdered on March 4, 1999.  Two witnesses saw a man walking along the highway near the Cobbs' house in New Harmony, Texas at approximately 2:30 p.m. on that date.  A neighbor later that day passed the Cobbs' maroon Cadillac on the highway.  When the neighbor arrived at home, she observed that the Cobbs' house was on fire.  A volunteer firefighter who had passed the Cobbs' Cadillac en route to the Cobb house later identified Newton Anderson as the driver of the car.  Firefighters discovered the bodies of Frank and Bertha Cobb in the house.  The hands of both victims had been bound with electrical tape, and they had both been shot in the head.  The evidence also indicated that Bertha Cobb had been sexually assaulted.

At trial, a DNA expert testified for the prosecution that the DNA from the semen discovered in Bertha Cobb's body matched Anderson's DNA.  In addition, Anderson's sister testified at trial that on March 6, 1999, Anderson confessed to involvement in the incident during a phone conversation with her.  Anderson's step-nephew, Michael Smith, also testified that on the day of the killings Anderson drove to his residence in a maroon Cadillac and asked him for help unloading property.  Smith assisted Anderson in unloading the items into a trailer that Anderson, his sister, and her husband shared.  Police later found several items in the trailer that had belonged to the Cobbs.

Anderson was indicted, tried, and convicted in Texas state court of killing two persons "during the same criminal transaction."  *See* TEX. PENAL CODE § 19.03(a)(7)(A).  At trial he pleaded not guilty, did not testify, and was convicted by a jury.  Anderson was sentenced to death, and his conviction and sentence were affirmed.  Anderson's state petition for post-conviction relief was denied.  He filed a petition for writ of habeas corpus in federal district court.  The district court

- 2 -

denied this petition, and Anderson timely appealed. The district court granted a certificate of appealability on eleven issues.

Prior to his conviction for the murders of Frank and Bertha Cobb, Anderson had an extensive criminal history. He had been incarcerated for family violence assault and for four burglaries. He had also been arrested as a juvenile in California for a burglary. Anderson's ex-wife testified that he physically abused her and that they had both used drugs during their marriage. Testimony was also presented indicating that Anderson, while awaiting trial, had implements that could be used in an escape attempt and had, on February 9, 2000, escaped from custody temporarily and exited the courthouse before being apprehended.

## II. STANDARD OF REVIEW

Because this appeal arises from a federal habeas petition filed in 2004, after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the AEDPA applies to his claims. *See Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002) (citing *Lindh v. Murphy*, 521 U.S. 320, 324-26 (1997) (noting that the AEDPA applies to all federal habeas corpus petitions filed on or after April 24, 1996)). The district court denied all of Anderson's claims and granted a certificate of appealability on all eleven issues. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Anderson, therefore, has the right to appeal. This court evaluates the merits determinations of the state habeas court to determine if they either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is considered contrary to established

federal law when it "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." *Miniel v. Cockrell*, 339 F.3d 331, 337 (5th Cir. 2003).

We review the district court's "conclusions of law de novo, applying the same standard of review to the state court's decision as the district court." *Henderson v. Quarterman*, 460 F.3d 654, 659 (5th Cir. 2006) (internal quotation omitted) (affirming the district court's denial of a petition for habeas corpus in a death penalty case). The district court granted summary judgment in favor of the State on all eleven issues. Accordingly, "this court must determine whether the record discloses any . . . issues . . . that would preclude summary judgment in the State's favor." *Id.* (quoting *Martinez v. Johnson*, 255 F.3d 229, 237 (5th Cir. 2006)) (omissions in original).

### III.  DISCUSSION

**A.    Ineffective assistance of counsel at trial**

Anderson argues that his Sixth Amendment right to counsel was violated by virtue of his attorneys' ineffective assistance at trial. Specifically, Anderson alleges that his counsel was ineffective by permitting an expert to testify on Anderson's behalf during the punishment phase who stated that Anderson would likely be a continuing threat to society if he were not in confinement. Dr. Quijano, a psychologist, testified that testing had confirmed that Anderson was dangerous but that he believed that the security in the Texas prison system would be able to prevent Anderson from committing violent acts in prison.

The Sixth Amendment right to counsel entitles the defendant to "a reasonably competent attorney, whose advice is within the range of competence demanded of attorneys in criminal cases." *United States v. Cronic*, 466 U.S. 648, 655 (1984) (internal quotation omitted). To succeed on an

ineffective assistance claim, Anderson must demonstrate that (1) his counsel's performance "fell below an objective standard of reasonableness" and (2) that the "deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Prejudice to the defense means that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. There is an initial presumption that counsel's decisions are reasonable. *Id.* at 689. Deficient representation occurs when "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Only if the petitioner can show that the state court was unreasonable in determining that this action could have furthered a reasonable strategy may assistance be found to be ineffective. *See Duff-Smith v. Collins*, 973 F.2d 1175, 1183 (5th Cir. 1992) (noting that failure to present any mitigating evidence was not ineffective assistance, but was instead a "reasoned trial strategy" and "not defective within the meaning of *Strickland*"). The state habeas court found that "Defense trial counsel made a reasonable trial strategy of accepting that mental health experts had said and would continue to say that Applicant was a future danger but that Dr. Quijano would show the jury that he could safely be controlled in prison."

Anderson argues that this was not a reasonable trial strategy and that, therefore, his conviction must be reversed. Anderson's trial counsel explained at the hearing on the state writ of habeas corpus that he had no other viable evidence for mitigation and that, therefore, his strategy was to convince one of the jurors, a Catholic lay person, that since Anderson could be controlled in prison she should vote against giving him the death penalty. In light of the evidence presented in the state court proceeding, we hold that this decision by the state court was not based on an unreasonable determination of the facts or an unreasonable application of the law. *See* 28 U.S.C. § 2254(d). We

reject this ground for relief.

**B.     Admission of crime scene photographs**

Anderson next argues that the trial court's admission of certain gruesome crime scene photographs constituted a violation of due process and requires reversal of his conviction. In general, state law matters are not proper grounds for habeas corpus relief. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (internal quotation omitted). Only if the admission was so prejudicial as to offend due process may the federal courts consider it. *See id.*

In evaluating the constitutionality of such evidence, this court has held that where the graphic crime scene photographs "serve[] to illustrate and make more understandable the officers' testimony which described the [scene] and its condition, and the location and condition of the deceased's body and the nature and extent of the injuries to the deceased," they do not offend due process. *Woods v. Johnson*, 75 F.3d 1017, 1039 (5th Cir. 1996). The state habeas court found that these photographs were "visual depictions of the oral testimony of investigators and firemen."

The photographs are disturbing and bloody depictions of the victims in a burned house. In order to meet the threshold of a *constitutional* violation by the admission of this evidence, Anderson must show that the evidence was "so unduly prejudicial that it render[ed] the trial fundamentally unfair." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). We need not decide this issue because "[t]he erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction." *Neal v. Cain*, 141 F.3d 207, 214

(5th Cir. 1998). Here, even assuming it was error to admit this evidence, the admission was not a crucial, highly significant factor in Anderson's conviction. The other evidence against Anderson was overwhelming, including Anderson's confession to his sister, his semen found inside of Bertha Cobb's body, his possession of the Cobbs' stolen property, and his having been seen driving away from the Cobbs' house. The state habeas court did not unreasonably interpret federal law in denying this ground for relief. We reject it as well.

**C.      Improper argument by the prosecution**

Anderson argues that the prosecutor committed reversible error during his argument at the guilt/innocence phase of the trial.

The prosecution made the following remarks:

> Before I get into that, do you think that in this case that the defendant – the Defense and the attorneys for the defendant would ever have admitted that he was even in the house in the first place if his – the Cobbs' property had not been found in his trailer? Do you think they would have come in and told you that? Do you think the Defense would have come in here and admitted that the defendant sexually assaulted Bertha Cobb if his semen had not been in her vaginal cavity? There's no honor in what they did. They did it—"

to which the defense objected, the court sustained the objection and instructed the jury to disregard the statement. The defense moved for a mistrial, which the court denied.

The prosecutor also stated in regards to whether another person could have committed the crime: "Who is this other person? Does anyone know? We don't. And the Defense never once—" at which point the defense objected. The court sustained the objection and instructed the jury to disregard the last portion of the prosecutor's statement. The defense then moved for a mistrial, and the court denied the motion.

Later in the argument, the prosecutor stated: "But I'll tell you this: Don't think for a minute

that the State of Texas believes that there is another person." Again the defense objected, the court sustained the objection and instructed the jury to disregard the statement, the defense moved for a mistrial, and the court denied the motion.

Anderson argues that these statements by the prosecutor amounted to constitutionally-impermissible "vouching" that necessitates a new trial. *United States v. Murrah*, 888 F.2d 24, 26–27 (5th Cir. 1989) (reversing a conviction because of improper statements by the prosecutor). "The test applied to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 278–79 (5th Cir. 1985).

The district court agreed with Anderson that these statements were improper, stating that "the prosecutor's comment was a bizarre and manifestly improper accusation that the Defendant and his counsel would have chosen to exercise his right to remain silent if they could have, and only waived it because of the evidence presented by the prosecution." The district court, however, found that in light of the other evidence presented against Anderson, the statements did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation omitted). We agree. While these statements by the prosecutor were inappropriate, the other evidence against the defendant was overwhelming. In addition, the court gave a curative instruction after each of the sustained objections to the improper statements. *Ward v. Dretke*, 420 F.3d 479, 499 (5th Cir. 2005) (noting that "a timely objection and request for a curative instruction would have mitigated the prejudice generated by the prosecutor's [improper] invocation"); *see also Derden v. McNeel*, 938 F.2d 605, 622 (5th Cir. 1991) (Jones, J., dissenting) ("[T]he trial judge's curative instructions to the jury with respect to the two instances of alleged

prosecutorial misconduct significantly reduced the risk of prejudice to [the defendant]."). We reject this ground for relief.

**D.      Use of undefined and vague terms in the special sentencing issues**

Anderson argues that the special issues submitted to the jury during the punishment phase contained undefined and vague terms so as to violate the Eighth Amendment. The special issues submitted to the jury are mandated by TEX. CODE CRIM. P. art. 37.071, § 2(b)(1)–(2) & (e). Anderson points to various words used in this special issues, namely "probability," "criminal acts of violence," and "continuing threat to society," in arguing that these terms are unconstitutionally vague.

In *Zant v. Stevens*, the Supreme Court noted that statutory aggravating factors "circumscribe the class of persons eligible for the death penalty." 462 U.S. 862, 878 (1983). In *Godfrey v. Georgia,* the Supreme Court reversed a death sentence on the basis that the aggravating factor used was unconstitutionally vague. 446 U.S. 420, 428, 433 (1980) (holding that "outrageously or wantonly vile, horrible and inhuman" was too vague of a sentencing factor).

Anderson acknowledges "that this Court has rejected similar complaints regarding the vagueness of these terms" and that he "wishes to preserve this error for further review in the event relief is not otherwise granted herein." A review of Fifth Circuit caselaw confirms that the court has consistently rejected similar complaints regarding the alleged vagueness of the same terms of which Anderson complains, and also of similar terms. *See James v. Collins*, 987 F.2d 1116, 1120 (5th Cir. 1993) (holding that the terms "deliberately," "probability," "criminal acts of violence," and "continuing threat to society" "have a common-sense core of meaning that criminal juries should be capable of understanding") (internal quotation omitted); *see also Hughes v. Johnson*, 191 F.3d 607, 615 (5th Cir. 1999); *Woods v. Johnson*, 75 F.3d 1017, 1033–34 (5th Cir. 1996). As these cases

foreclose relief, we reject this ground for habeas relief.

**E.      Trial court's failure to inform the jury of the effect of a non-unanimous verdict as to any of the special sentencing issues**

Anderson also argues that the trial court's failure to inform the jury properly about the effect of a non-unanimous verdict on the special sentencing issues constituted a violation of the Eighth Amendment.  In other words, Anderson argues it was unconstitutional that the court did not instruct the jury that if they fail to reach a verdict on punishment that the defendant would have received a sentence of life.  Anderson relies on *Mills v. Maryland*, 486 U.S. 367 (1988), and *McKoy v. North Carolina*, 494 U.S. 433 (1990).

This court, however, has previously held that the situation about which Anderson complains is not sufficiently similar to *Mills* and *McKoy* to permit relief.  Anderson acknowledges this in his brief, stating that "the current expression of this Circuit's law is that *Mills* is not applicable to the capital sentencing scheme in Texas.  He wishes to preserve this error for further review in the event relief is not otherwise granted herein."  In *Hughes*, the court stated that "[u]nlike the systems discussed in *Mills* and *McKoy*, a single juror in Texas cannot preclude the remainder of the jury from considering mitigating evidence."  191 F.3d at 629.  Previously, in *Jacobs v. Scott*, the court noted that "the law in Texas is completely different from that in *Mills*."  31 F.3d 1319, 1328 (5th Cir. 1994) (holding that this claim was procedurally barred but also was "meritless").  We reject this ground for habeas relief.

**F.      Failure to require the statutory aggravating factors to be alleged in the indictment and requiring Anderson to bear the burden of proof on mitigation**

Anderson alleges that the trial court's failure to require that the statutory aggravating factors be alleged in the indictment was a violation of due process.  Anderson argues that under *Apprendi*

*v. New Jersey*, 530 U.S. 466, 476 (2000), any fact that increases the penalty for a given crime beyond the statutory maximum must be alleged in the indictment and proven at trial beyond a reasonable doubt. *Apprendi* does not require that the special sentencing issues for the death penalty be pleaded in the indictment. Anderson points to no law indicating such a requirement, and this court holds that the state habeas court was not unreasonable in rejecting such a requirement.

Anderson further argues that he was improperly required to bear the burden of proof on the mitigation special sentencing issue in violation of due process. This argument also does not implicate *Apprendi*. The absence of mitigating circumstances is not "the functional equivalent of an element of a greater offense." *Apprendi*, 530 U.S. at 494 n.19; *see also Rowell v. Dretke*, 398 F.3d 370, 379 (5th Cir. 2005) ("[N]o Supreme Court or Fifth Circuit authority requires the State to prove the absence of mitigating circumstances beyond a reasonable doubt."). We reject these grounds for relief.

**G.      Ineffective assistance of counsel on direct appeal**

Anderson argues that he received ineffective assistance of counsel during his direct appeal. Specifically, Anderson argues that his direct appeal counsel was ineffective for only raising three issues on direct appeal, namely, legal insufficiency of guilt, factual insufficiency of guilt, and potential error by the court in striking a portion of the cross-examination of an expert for the state.

The state habeas court rejected this claim, finding that "Appellate counsel reviewed the record and concluded that while there were some trial errors, in his opinion, other than the one issue raised, that there was no error which would result in a reversal of the judgment and sentence" and that "Appellate counsel's performance was not deficient and did not fall below an objective standard of reasonableness." We may only grant relief if the state court was unreasonable in making this determination.

As previously stated, to succeed on an ineffective assistance claim, Anderson must demonstrate that his counsel's performance "fell below an objective standard of reasonableness" and that the "deficient performance prejudiced the defense." *See Strickland*, 466 U.S. at 687–88. Appellate counsel explained at the state court hearing on the writ of habeas corpus that it would have been a waste of time to argue other issues. In addition, it might potentially have aggravated the appellate court to have to read about insignificant issues, thereby making it less likely that Anderson would win on the significant issues. Anderson points out, however, that his counsel should have considered the possibility of waiver in not raising these arguments. The district court agreed with Anderson and found that he had satisfied the first prong of *Strickland*, namely that counsel's performance fell below an objective standard of reasonableness. We assume, without deciding, that this conclusion is correct. To succeed on an ineffective assistance claim, however, Anderson must also have shown that the error caused prejudice. The issues that Anderson argues his counsel should have raised on direct appeal, namely issues B-F above, lack merit. As such, failure to raise these issues did not prejudice Anderson. Anderson further argues, however, that "[i]t was reasonably probable that at least one of the issues raised above, would have been considered by the Supreme Court." We disagree. The state court did not act unreasonably in denying this ground for habeas relief. We therefore reject this ground for relief.

## H.    The state's unfettered discretion in deciding whether to seek the death penalty

Anderson next argues that the Texas death penalty statute violates due process, equal protection, and due course of law to a constitutionally impermissible degree because it gives unbridled discretion to prosecutors in determining whether or not to seek the death penalty. Anderson does not point to any Supreme Court or Fifth Circuit precedent forbidding such discretion, and we have

found none.  Anderson states that he wishes to preserve this point for further review.  We reject this ground for habeas relief.

**I.       The trial court's failure to grant a mistrial after it struck the testimony of the state's risk assessment expert**

Anderson argues that the state trial court should have granted a mistrial when it struck the testimony of a risk expert for the state by reading the testimony back to the jury.  Anderson raised this claim on direct appeal, but the court refused to consider it on the merits because Anderson failed to preserve the error at trial.  *See Jackson v. Jackson*, 194 F.3d 641, 652 (5th Cir. 1999) ("[The] Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims.") (internal quotation omitted).  Accordingly, the federal courts will only consider this claim "if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998).  In its motion for summary judgment, the State argued that procedural default applied to this claim.  In his reply to the motion for summary judgment, Anderson did not argue cause and prejudice or actual innocence.  He admits as much in his appellate brief, stating that his only suggested ground for cause was "not directly briefed as cause for the default."  As such, the district court properly refused to consider this issue on the merits.[1]  We reject this ground for relief.

**J.       Cumulative effect of errors**

Anderson finally argues that, even if none of the individual errors alleged necessitate reversal, the cumulative effect of these errors does.  In *Kyles v. Whitney*, the Supreme Court recognized that

---

[1]It appears from the record that the State could also have properly raised procedural default with respect to other claims, but the State did not do so.  This court will not consider these arguments.

the cumulative effect of errors, none of which individually are significant, could be collectively significant. 514 U.S. 419, 436–37 (1995). The state habeas court rejected this argument, finding that "the cumulation of any mere trial error did not amount to federal constitutional harm" and "that the cumulation of errors did not amount to a deprivation of due process." We do not hold that this conclusion was an unreasonable determination of the law or an unreasonable application of the facts. We reject this ground for relief.

## IV. CONCLUSION

For the above-stated reasons, the district court's denial of Newton Anderson's petition for a writ of habeas corpus is AFFIRMED.