# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-70018

JOHN WILLIAM KING,

      Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

August 8, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:01-CV-435

Before KING, JOLLY, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Petitioner–Appellant John William King was convicted of capital murder and sentenced to death. King filed a federal habeas petition raising 21 claims, all of which were denied by the district court. The district court also declined to issue a certificate of appealability (COA) on any of the claims. King now requests from this court a COA on five claims for habeas relief. For the following reasons, we GRANT a COA in part on one of King's claims. We

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-70018

DENY a COA on King's other claims.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Background of the Crime and Trial

In February 1999, Petitioner–Appellant John William King was sentenced to death for the murder of James Byrd, Jr. *King v. State*, 29 S.W.3d 556, 558 (Tex. Crim. App. 2000).  The body of Byrd, a black male, had been found in front of a church in the town of Jasper with his head, neck, and right arm missing. *Id.*  About a mile and a half up the road, Byrd's head, neck, and arm were discovered near a culvert. *Id.*  A forensic pathologist testified at King's trial that the injuries sustained by Byrd were consistent with having his ankles wrapped together by a chain and being dragged over the road before he was ultimately killed when his body hit the culvert. *Id.* at 562.  A trail of blood and Byrd's possessions led the police further up a logging road to a grassy area that appeared to be the scene of a fight. *Id.* at 558.  At this area and along the logging road, the police found "a cigarette lighter engraved with the words 'Possum' and 'KKK,' a nut driver wrench inscribed with the name 'Berry,' three cigarette butts, a can of 'fix-a-flat,' a compact disk, a woman's watch, a can of black spray paint, a pack of Marlboro Lights cigarettes, beer bottles, a button from Byrd's shirt, and Byrd's baseball cap." *Id.*

King's roommate, Shawn Berry (who owned a primer-grey pickup truck[1]), was later arrested. *Id.* at 558–59.  King, Berry, and their third roommate, Lawrence Russell Brewer, were all eventually charged with the murder of Byrd. *Id.* at 559.  In separate trials, Berry was convicted and sentenced to life imprisonment, *see Berry v. State*, No. 09-00-061CR, 2001 WL 726273, at *1 (Tex. App.—Beaumont June 27, 2001, pet. ref'd), and Brewer was

---

[1] A witness had seen Byrd the night that he was killed riding in the back of primer-grey pickup truck while three white individuals were in the cab of the truck. *Id.* at 558.

convicted and sentenced to death, *see Brewer v. Quarterman*, 466 F.3d 344, 345 (5th Cir. 2006). King was convicted by a jury based on a variety of circumstantial evidence. *See King*, 29 S.W.3d at 565. Some of the key pieces of the prosecution's evidence included (1) a cigarette butt found at the scene of the fight (which had King's DNA on it as a major contributor and potentially had Byrd's DNA on it as a minor contributor[2]), (2) King's sandals[3] (which had Byrd's DNA on them), and (3) King's white supremacist views and racial animosity[4] (which provided motive for the murder). *See id.* at 559, 564–65. King's attorneys during his trial were Haden Cribbs and Brack Jones (collectively, trial counsel).

## B. Direct Appeal and Post-Conviction Proceedings

In October 2000, on direct appeal to the Texas Court of Criminal Appeals (TCCA), King's conviction and death sentence were affirmed.[5] *Id.* at 558. King raised the following arguments on direct appeal: (1) the evidence was legally and factually insufficient to support his conviction because it did not show that Byrd was kidnapped or that King was a party to the capital murder; (2) the trial court erred in denying his requests for new counsel and his trial counsel was ineffective in failing to introduce evidence to support his trial counsel's

---

[2] The prosecution's DNA expert testified that one way an individual can be a minor contributor of DNA is if that individual were to take a drag off of the cigarette.

[3] King argues that the sandals with Byrd's DNA on them actually belonged to Lewis Berry (Shawn Berry's brother). Lewis Berry sometimes lived in the same apartment as King, Brewer, and Shawn Berry. Lewis Berry, however, was eliminated as a suspect by law enforcement after other individuals confirmed his whereabouts the night of the murder.

[4] For example, the Texas Court of Criminal Appeals summarized this evidence as follows: "Several witnesses testified about how [King] refused to go to the home of an African-American and would leave a party if an African-American arrived. In prison, [King] was known as the 'exalted cyclops' of the Confederate Knights of America . . . , a white supremacist gang. Among the tattoos covering [King's] body were a woodpecker in a Ku Klux Klansman's uniform making an obscene gesture; a 'patch' incorporating 'KKK,' a swastika, and 'Aryan Pride'; and a black man with a noose around his neck hanging from a tree." *Id.* at 559–60 (footnotes omitted).

[5] King was represented by new counsel during his direct appeal.

motion to withdraw; (3) the trial court erred in sustaining the prosecution's challenge for cause to remove a potential juror; and (4) the trial court erred in refusing to hold an evidentiary hearing on King's motion for a new trial. *See id.* at 558–69.

While King's direct appeal was pending, John Heath was appointed to represent King in his state habeas petition. In July 2000, King filed his state habeas petition, which argued that the trial court deprived him of his right to effective assistance of counsel by denying his request for new counsel and raised four ineffective assistance of trial counsel claims based on his trial counsel's failure to (1) raise an insanity defense; (2) investigate matters supporting mitigation; (3) investigate and present an alibi defense; and (4) make a full record. King, who appears to have immediately had disagreements with Heath, filed numerous letters and motions with the trial court requesting new counsel. Notably, Heath wrote a letter in June 2000 to King stating that King failed to understand several aspects of the appellate process, including that "[t]he appeal of your case, both the direct appeal and the Writ, are based solely on the record of the case" and that "[n]o new evidence can be brought up at this stage." In February 2001, the trial court recommended that King's state habeas petition be denied and adopted in full the State's proposed findings of fact and conclusions of law. In June 2001, the TCCA found that the trial court's findings and conclusions were supported by the record (with minor exceptions not relevant here) and denied King's state habeas petition.

In September 2002, King filed his federal habeas petition. King was represented by his current attorney A. Richard Ellis. In total, King's federal habeas petition raised 21 claims for relief (plus additional sub-claims). The State subsequently moved for summary judgment, raising as one of its primary arguments that King had failed to exhaust his claims in state court. In

No. 16-70018

response, King moved to stay the proceedings so that he could file a second state habeas petition in order to exhaust those claims. In March 2006, the district court granted in part the State's motion for summary judgment. Specifically, the district court divided the claims between those that had and had not been exhausted. For the few exhausted claims, the district court granted the State's motion for summary judgment. For the unexhausted claims, the district court granted King's motion to stay the case while he presented the unexhausted claims to the appropriate state court.

In June 2006, King filed a second state habeas petition raising the unexhausted claims. Ellis (King's federal habeas counsel) filed the second state habeas petition. In September 2012, the TCCA dismissed King's second state habeas petition "as an abuse of the writ without considering the merits of the claims." *Ex Parte King*, No. WR-49391-02, 2012 WL 3996836, at *1 (Tex. Crim. App. Sept. 12, 2012).

In January 2013, following the TCCA's dismissal of his second state habeas petition, King filed a nearly 600-page amended federal habeas petition. In June 2016, the district court denied King's habeas petition in a 94-page opinion.[6] The district court also declined to issue a certificate of appealability (COA) on any of the claims. King now seeks from this court a COA on five claims.

## II.  COA STANDARD

Following a district court's denial of a habeas petition, a state prisoner does not have an absolute right to appeal; instead, the state prisoner must first obtain a COA. *See, e.g.*, *Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017). Under 28 U.S.C. § 2253(c)(2), "[a] COA may issue 'only if the applicant has made a substantial showing of the

---

[6] The district court denied King's request for an evidentiary hearing.

denial of a constitutional right.'" *Buck*, 137 S. Ct. at 773 (quoting 28 U.S.C. § 2253(c)(2)). To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Supreme Court has recently emphasized that the COA inquiry "is not coextensive with a merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 137 S. Ct. at 773 (quoting *Miller-El*, 537 U.S. at 336).

Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"[7] *Rhoades*, 852 F.3d at 427 (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012)).[8]

Here, King requests a COA on five claims:

(1) his trial counsel was ineffective in presenting the future dangerousness issue;

(2) his trial counsel was ineffective in presenting the motion to change venue;

(3) his trial counsel was ineffective in presenting his case for actual

---

[7] Our court has said that, when the petitioner was sentenced to death, "any doubts as to whether a COA should issue must be resolved in the petitioner's favor." *Rhoades*, 852 F.3d at 427 (quoting *Allen v. Stephens*, 805 F.3d 617, 625 (5th Cir. 2015)).

[8] As discussed below, King's claims on appeal were not addressed on the merits by Texas courts (with limited exceptions). Thus, the deference typically given under the Antiterrorism and Effective Death Penalty Act (AEDPA) "does not apply here . . . because the district court was not reviewing a state court decision on the merits of [the petitioner's] claim but rather addressing the merits for the first time." *Trevino v. Davis* ("*Trevino II*"), 829 F.3d 328, 341 (5th Cir. 2016). Accordingly, "AEDPA's deferential standard of review does not apply, and we review the merits de novo." *Id.*

innocence;

(4) his trial counsel was ineffective in failing to present psychiatric evidence at both the guilt and punishment phases of trial; and

(5) the district court denied him due process and a fair hearing.

As discussed below, we grant a COA in part on Claim 3 and deny a COA on the other claims.

## III.  INEFFECTIVE ASSISTANCE CLAIMS

King's first four claims are premised on the denial of his constitutional right to counsel.  For these claims, two intersecting legal frameworks apply: the *Strickland* ineffective assistance of counsel standard and the *Martinez/Trevino* exception to procedural default.  We first discuss these legal frameworks before assessing each of King's ineffective assistance claims in light of the COA inquiry.

### A.  The *Strickland* Standard

"The Sixth Amendment right to counsel 'is the right to the effective assistance of counsel.'"  *Buck*, 137 S. Ct. at 775 (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).  To succeed on a claim of ineffective assistance of counsel, a defendant must meet a two-prong test by showing that (1) his counsel performed deficiently and (2) his counsel's deficient performance caused him prejudice.  *See id.*

The first prong of the *Strickland* test—*i.e.*, whether counsel performed deficiently—"sets a high bar."  *Id.*  A defendant's counsel "discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'"  *Id.* (quoting *Strickland*, 466 U.S. at 690).  This prong is met only when the defendant's counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  And "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance.'" *Rhoades*, 852 F.3d at 432 (quoting *Strickland*, 466 U.S. at 689).

For the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## B. The *Martinez/Trevino* Exception to Procedural Default

In reviewing the constitutionality of a state prisoner's conviction and sentence, a federal habeas court's review is "guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). One such rule is the doctrine of procedural default, which dictates that "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Id.* Specifically, "[a] state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Id.*; *see also Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) ("[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule."). Here, the TCCA dismissed King's second state habeas petition pursuant to Texas's abuse of writ doctrine, which prohibits a successive state habeas petition except under limited circumstances. *See Ex Parte King*, 2012 WL 3996836, at *1. And importantly, "Texas's abuse of writ doctrine is a valid state procedural bar foreclosing federal habeas review."

No. 16-70018

*Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008) (quoting *Coleman v. Quarterman*, 456 F.3d 537, 542 (5th Cir. 2006)).  Accordingly, King's ineffective assistance claims—which were contained in his second state habeas petition and dismissed under Texas's abuse of writ doctrine—would typically be barred by the procedural default rule.

The procedural default rule, however, is not absolute, and a state prisoner "may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."  *Martinez*, 566 U.S. at 10.  In *Martinez*, the Supreme Court held that, when a state requires ineffective assistance claims to be brought on collateral review, a state prisoner may establish the necessary cause to overcome the procedural default rule if the prisoner meets a two-part test: "(1) 'the state courts did not appoint counsel in the initial-review collateral proceeding,' or 'appointed counsel in [that] proceeding . . . was ineffective under the standards of *Strickland* . . . '; and (2) 'the underlying . . . claim is a substantial one, which is to say that . . . the claim has some merit.'"  *See Buck*, 137 S. Ct. at 771 (alteration in original) (first, third, and fourth omissions in original) (quoting *Martinez*, 566 U.S. at 14).  In *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013), the Supreme Court extended this exception to include convictions in Texas (even though a Texas state prisoner is not formally required to raise an ineffective assistance claim only on collateral review).  Thus, a Texas state prisoner, such as King, can raise an ineffective assistance claim that would otherwise be barred by the procedural default rule if he is able to meet the *Martinez/Trevino* exception— (1) his state habeas counsel was ineffective under *Strickland* for failing to raise the ineffective assistance claim in his first state habeas petition, and (2) the claim is substantial, meaning that the claim has some merit.

Here, King must meet the *Martinez/Trevino* exception because his ineffective assistance claims are otherwise barred by the procedural default

rule.  Thus, we turn to whether King's state habeas counsel was ineffective in failing to raise the ineffective assistance claims, and if so, whether those claims are substantial.

## C.  First Prong of the *Martinez/Trevino* Exception

The first prong of the *Martinez/Trevino* exception looks to whether King's state habeas counsel, Heath, was ineffective in failing to raise the ineffective assistance of trial counsel claims in King's first state habeas petition.  King contends that Heath was ineffective because Heath failed to understand what arguments and evidence could be presented in the collateral proceeding, pointing to the letter that Heath sent to King in June 2000.  In that letter, Heath claimed that "[t]he appeal of your case, both the direct appeal and the Writ, are based solely on the record of the case" and that "[n]o new evidence can be brought up at this stage."  Heath's belief that King's habeas petition could rely solely on the record was incorrect.  Indeed, as the Supreme Court has said, "[i]neffective-assistance claims often depend on evidence outside the trial record."  *Martinez*, 566 U.S. at 13.  The State does not directly counter King's contention that Heath was ineffective.  Instead, the State argues that, even if Heath was ineffective, King has failed to show that each of his ineffective assistance claims is substantial (*i.e.*, the second prong of the *Martinez/Trevino* exception).  Thus, under these circumstances, we conclude that jurists of reason could debate whether Heath was ineffective in failing to raise any substantial ineffective assistance claims.[9]  *See Trevino II*, 829 F.3d

---

[9] We note that this inquiry is somewhat circular when the underlying ineffective assistance of trial counsel claim that a state habeas counsel failed to raise is insubstantial.  In that context, there is an added wrinkle about whether the state habeas counsel should be considered ineffective under the first prong of the *Martinez/Trevino* exception for failing to raise an insubstantial ineffective assistance claim, even if the state habeas counsel misunderstood the law.  *See Ayestas v. Stephens*, 817 F.3d 888, 898 (5th Cir. 2016) (per curiam) ("Because we agree with the district court that there is no basis to hold trial counsel was constitutionally ineffective for failing to investigate further the possible questions of

at 349 ("[The petitioner] at least sufficiently pleaded that his state habeas counsel was ineffective so as to excuse his procedural default in failing to raise the ineffective-assistance-of-trial-counsel failure-to-investigate claim earlier.").

## D.  Second prong of the *Martinez/Trevino* Exception

The second prong of the *Martinez/Trevino* exception requires the ineffective assistance of trial counsel claim at issue to be substantial, which means that the claim must have some merit.  *Martinez*, 566 U.S. at 14.  Thus, we must assess whether the merits of the underlying ineffective assistance claims meet the threshold COA inquiry.  *See Trevino v. Davis* ("*Trevino III*"), 861 F.3d 545, 548–49 (5th Cir. 2017) ("The substantiality of the underlying IATC claim is based on the same standard for granting a COA.").  If the merits of an underlying ineffective assistance claim meet the COA inquiry, then that claim is "substantial" under the *Martinez/Trevino* second prong for the purpose of granting a COA.

*i.  Claim 1: Whether King's trial counsel was ineffective in presenting the*

---

mental illness and substance abuse, [the petitioner's] state habeas counsel were not ineffective for failing to pursue that line of investigation.  Raising every conceivable claim is neither required nor beneficial."), *cert. granted sub nom. Ayestas v. Davis*, 137 S. Ct. 1433 (2017); *see also Matthews v. Davis*, 665 F. App'x 315, 322 (5th Cir. 2016) (per curiam) ("We conclude that no reasonable jurist would debate the district court's resolution of the question of whether [the petitioner's] state habeas counsel rendered ineffective assistance of counsel by failing to bring an insubstantial ineffective-assistance-of-trial-counsel claim pertaining to [the petitioner's] possible [Fetal Alcohol Spectrum Disorder]."), *cert. filed*, No. 17-5078 (2017).  For King's underlying ineffective assistance claims that we decide below do not meet the COA inquiry (and, thus, deny a COA because of the second prong of the *Martinez/Trevino* exception), we need not decide whether jurists of reason could debate whether Heath was ineffective for failing to raise those claims; instead, we assume arguendo that the first prong of the *Martinez/Trevino* exception is met.  However, given our conclusion below that King's Claim 3 is in part sufficient to meet the COA inquiry, we conclude that jurists of reason could debate whether Heath was ineffective for failing to raise that claim in King's first state habeas petition.

No. 16-70018

*future dangerousness issue*

King's first ineffective assistance claim is that his trial counsel was ineffective in presenting the future dangerousness issue.[10]  In support of this claim, King first argues that his trial counsel failed to effectively counter the prosecution's expert testimony from Dr. Edward Gripon.  King next argues that his trial counsel was ineffective in using Dr. Walter Quijano as an expert.  Finally, King contends that there was other, more persuasive expert testimony available at the time of trial, which highlights his trial counsel's ineffectiveness.  The district court, however, rejected these arguments.  The district court concluded that this claim lacked merit because King's arguments amounted to nothing more than merely questioning his trial counsel's strategy, and a review of the record revealed that his trial counsel's performance was not deficient in cross-examining Dr. Gripon and in using Dr. Quijano.  Given that the district court found that this claim lacked any merit, it concluded that this claim was not substantial under the second prong of the *Martinez/Trevino* exception, and thus, this claim was procedurally defaulted.

We decline to issue a COA on this claim because jurists of reason could not debate the district court's conclusion that King's trial counsel's performance was not deficient with respect to the future dangerousness issue.  First, Dr. Gripon, a psychiatrist, testified that he believed that King would pose a future threat of dangerousness based on factors such as King's white supremacist views and criminal history.  In cross-examination, King's trial counsel sought to undermine the predictive capabilities of Dr. Gripon by, for

---

[10] During the punishment phase of a Texas capital case, several special issue questions are submitted to the jury.  One such issue for the jury is what the parties refer to as future dangerousness—*i.e.*, "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."  Tex. Code Crim. Proc. art. 37.071, § 2(b)(1); *see also Johnson v. Cockrell*, 306 F.3d 249, 253 (5th Cir. 2002).

example, getting Dr. Gripon to admit that the American Psychiatric Society's position is that a psychiatrist is no better at predicting future dangerousness than any other individual of equal intelligence. King's trial counsel spent the remainder of his cross-examination drawing out testimony about how Dr. Gripon received information about King only from the prosecution (or the federal government) and how Dr. Gripon did not personally interview King (which Dr. Gripon admitted was the best way to form a prediction on future dangerousness). Jurists of reason could not debate whether King's trial counsel was deficient in cross-examining Dr. Gripon.

Second, Dr. Quijano testified about his theory on future dangerousness, which applied factors that he had developed based on his experience. Dr. Quijano ultimately concluded that, if left in the free world, King would be a future danger to society, but in prison, the probability of future dangerousness was low. As King points out, Dr. Quijano stated that some factors weighed in favor of finding King to be a future danger. That being said, the clear inference from Dr. Quijano's testimony is that King's trial counsel was attempting to show that King would not be a future danger within the confines and regulations of prison. King, however, argues that this strategy was inadequate and included flawed reasoning by Dr. Quijano. In support of this argument, King points to an affidavit included with his federal habeas petition from Dr. Mark Cunningham, a psychologist, purportedly showing that more accurate and stronger arguments about future dangerousness were available. Yet, this is simply an argument for a different strategy, and jurists of reason could not debate whether King's trial counsel's strategy of presenting Dr. Quijano's testimony fell outside of the wide range of reasonable professional assistance. *Cf. Rhoades*, 852 F.3d at 434 ("[The petitioner] presents us with no colorable argument that the state court's finding defense counsel's trial strategy reasonable was unreasonable."); *Anderson v. Quarterman*, 204 F. App'x 402,

406 (5th Cir. 2006) (holding that a state habeas court's decision was not based on an unreasonable determination of the facts or an unreasonable application of the law under 28 U.S.C. § 2254(d) when it found that trial counsel had used a reasonable strategy in presenting Dr. Quijano to testify about how the petitioner could be safely controlled in prison).

In sum, jurists of reason could not debate the district court's conclusion that King's trial counsel's performance was not deficient with respect to the future dangerousness issue. Accordingly, jurists of reason could not debate the district court's conclusion that this claim is procedurally defaulted because King has failed to meet the second prong of the *Martinez/Trevino* exception, and thus, we decline to issue a COA on this claim.

*ii. Claim 2: Whether King's trial counsel was ineffective in presenting the motion to change venue*

The state trial court denied King's motion to change venue, and his second ineffective assistance claim is that his trial counsel was ineffective in presenting that motion. Specifically, King contends that, although a hearing was held on his motion to change venue, it was a "perfunctory affair" and his trial counsel "had an entirely misguided and doomed fixation on a trivial rise in Jasper property taxes as their main rationale for a change of venue, which only affected each taxpayer to the extent of about five dollars." King also compares his trial counsel's performance with that of Brewer's trial counsel, who was able to obtain a change of venue. King argues that he was prejudiced because the people in Jasper needed to secure a guilty verdict to avoid racial strife and that the trial atmosphere was utterly corrupted by the extensive coverage of the case. The district court, however, denied this claim, finding both that King's trial counsel's performance was not deficient and that King had failed to demonstrate prejudice. Regarding King's trial counsel's performance, the district court noted that his trial counsel had filed a motion

to change venue, which included as exhibits the local and statewide newspaper coverage of the case, and called two witnesses who testified that King could not receive a fair trial in Jasper. The district court further reasoned that King had not pointed to any additional witnesses who were available to testify at the hearing. Regarding prejudice, the district court found that King had failed to show that the outcome would have been different, especially considering the fact that Brewer (whose trial was moved) received a death sentence and Shawn Berry (whose trial was not moved) received only a life sentence. Accordingly, the district court found that this claim was procedurally defaulted because the claim lacked any merit and, thus, was not substantial under the second prong of the *Martinez/Trevino* exception.

We decline to issue a COA on this claim because jurists of reason could not debate the district court's conclusion that King's trial counsel's performance was not deficient in presenting the motion to change venue. In support of the motion, King's trial counsel introduced numerous examples of newspaper articles, highlighting the extensive press coverage that the case had received. Moreover, King's trial counsel called two witnesses who testified that King could not receive a fair and impartial trial in Jasper.[11] Although it is true that the prosecution called a greater number of witnesses who testified that King could receive a fair trial, the number of witnesses alone does not signal a trial counsel's deficient performance. Finally, although King recognizes that his trial counsel elicited some testimony about his ability to receive a fair trial, he counters that his trial counsel focused improperly on a theory that Jasper residents were unhappy with a property tax increase that supported trial costs. But this argument is simply not an accurate characterization. Far from being

---

[11] King's trial counsel also included affidavits from two other witnesses as part of the motion to change venue, which similarly said that King could not receive a fair and impartial trial in Jasper.

the focus of King's trial counsel, the tax theory made only brief appearances in his trial counsel's questioning.

In sum, jurists of reason could not debate the district court's conclusion that King's trial counsel's performance did not fall outside the wide range of reasonable professional assistance. Accordingly, we decline to issue a COA on this claim because jurists of reason could not debate the district court's conclusion that the claim is procedurally defaulted given that King has failed to meet the second prong of the *Martinez/Trevino* exception.

*iii. Claim 3: Whether King's trial counsel was ineffective in presenting his case for actual innocence*

King's third ineffective assistance claim is that his trial counsel was ineffective in presenting his case for actual innocence. In support of this claim, King cites to examples of what he views as evidence of his trial counsel's ineffectiveness in presenting his case for innocence. For example, King contends that there were only a few pieces of circumstantial evidence tying him to the scene of the fight and that each of those pieces of evidence had an innocent explanation, but his trial counsel offered only confusing and disjointed explanations.[12] In light of the COA inquiry, we conclude that jurists of reason could debate whether King's trial counsel's performance was deficient with respect to this claim and whether King was prejudiced. Accordingly, jurists of reason could also debate whether the *Martinez/Trevino* exception applies to this claim, and thus, we grant a COA on this claim.[13] *See Busby v.*

---

[12] For example, during closing arguments, King's trial counsel apologized to the jury for forgetting what the evidence showed about who had possession of the "Possum" lighter at the time of the murder before moving on to the cigarette butt that had King's DNA on it, which his trial counsel appeared to concede also contained Byrd's DNA (although the prosecution's DNA expert had actually testified only that Byrd could not be excluded from being a minor contributor).

[13] However, to the extent that King is arguing in support of this claim that his trial counsel was ineffective in searching for an alibi witness, we decline to issue a COA with

*Davis*, 677 F. App'x 884, 893 (5th Cir. 2017) (per curiam) ("At this stage, we simply conclude that reasonable jurists could debate whether [the petitioner] has presented a substantial, or viable, IATC claim sufficient to excuse the procedural default and to merit a COA."). Further development of this issue will await the briefing ordered below.

*iv. Claim 4: Whether King's trial counsel was ineffective in failing to present psychiatric evidence at both the guilt and punishment phases of trial*

King's fourth ineffective assistance claim is that his trial counsel was ineffective in failing to use a psychiatric expert to present testimony at both the guilt and punishment phases of trial. As an initial matter, the parties' briefing for this claim is somewhat convoluted and complicated by the fact that King contends that the district court "completely mischaracterizes the claim." King's arguments on appeal appear to blend, at least in part, the substance of two nominally distinct claims that he raised in the district court: the claim that his trial counsel was ineffective in failing to obtain and use a psychiatric expert to present testimony at both the guilt and punishment phases of trial (which we understand to be the claim renewed on this appeal), and the claim that his trial counsel was ineffective in failing to investigate and present mental health

---

respect to that aspect of the claim. As the district court correctly recognized, King did raise this argument in his first state habeas petition, and the state habeas court found that his trial counsel made diligent efforts to find the alibi witness and, thus, did not render constitutionally deficient performance in attempting to find the alibi witness. The district court thus denied this aspect of the claim under 28 U.S.C. § 2254(d) because King had failed to show "that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." On appeal, King only offers conclusory arguments about why his trial counsel's recounting of the efforts to find the alibi witness—which was included in an affidavit that was submitted as part of the first state habeas proceedings—should not be believed, and he does not offer any further clue as to who the alibi witness was or how his trial counsel should have found the alibi witness. Accordingly, jurists of reason could not debate the district court's denial of this aspect of the claim.

information (which is not the claim renewed on this appeal).

On appeal, regarding the guilt phase, King appears to argue that his trial counsel was ineffective in failing to properly explore an insanity defense or whether he was incompetent to stand trial. According to King, his trial counsel should have had him evaluated on a confidential basis by a psychiatrist, which he was entitled to under *Ake v. Oklahoma*, 470 U.S. 68 (1985). King argues that a reasonable investigation by his trial counsel would have found evidence in his medical and prison files showing that he suffered from mental health problems. Regarding the punishment phase, King argues that his trial counsel was ineffective for failing to use testimony from a psychiatrist to present his mental health problems. King appears to be arguing that the same mental health problems that should have been presented at the guilt phase should also have been presented at the punishment phase (although he is not entirely clear whether this evidence should weigh on the future dangerousness issue, the mitigation issue, or both).

The district court rejected all aspects of King's claim. For the guilt phase aspect of this claim, the district court noted that, in fact, King had raised this argument in his first state habeas petition, but the TCCA had found that his trial counsel was not ineffective in failing to raise an insanity defense. The district court reasoned that King's claim lacked merit because there was no evidence that King had any mental disorders that would have supported an insanity defense or that he was incompetent to stand trial, which was highlighted by the fact that Dr. Quijano testified that King would pose less of a future danger because he did not have any mental disorders that could cause irrational reactions. Accordingly, given that the state habeas court considered and rejected this argument, the district court rejected this claim because "King ha[d] not shown, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." For the punishment phase aspect of this claim, which had not been raised in King's first state habeas petition (and, thus, was subject to the procedural default rule), the district court credited King's trial counsel's efforts to investigate whether any mental health problems could be used as evidence for mitigation or a lack of future dangerousness. Specifically, King's trial counsel had submitted an affidavit as part of the first state habeas proceedings stating that he had consulted with two psychologists (one being Dr. Quijano) who examined King and found no evidence of mental illness. Thus, the district court found that King's trial counsel's performance with respect to this aspect of the claim was not deficient because his trial counsel had conducted a reasonable investigation into his mental health and the decision not to seek a further psychiatric evaluation was an informed, strategic decision. Accordingly, the district court found that the punishment phase aspect of this claim was procedurally defaulted.

For the guilt phase aspect of this claim, the district court correctly recognized that, given that the state habeas court did address the merits of this aspect of the claim, King could only succeed if he meets the heightened standard of review under § 2254(d). *See Rhoades*, 852 F.3d at 434 (describing how our review is "'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)" (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011))). King, however, only speculates about what might have been discovered had his trial counsel attempted to have him evaluated by a psychiatrist. King points to his alleged history of depression, bipolar disorder, and suicide attempts, but he does not explain further how this history could have justified (or led to) an insanity

defense or an opinion that he was incompetent to stand trial. King's trial counsel's affidavit explained that he had consulted two psychologists, and neither psychologist found evidence that King had any mental illnesses. Accordingly, jurists of reason could not debate the district court's denial of this aspect of the claim under § 2254(d), and thus, we deny a COA on this claim with respect to the guilt phase of trial.

For the punishment phase aspect of this claim, King again focuses on his history of depression, bipolar disorder, and suicide attempts, which he argues was easily discoverable and should have been presented to the jury. Jurists of reason, however, could not debate the district court's conclusion that King's trial counsel's performance was not deficient. In his affidavit in the first state habeas proceedings, King's trial counsel explained that King had denied having any mental disability that could support mitigation and that two psychologists had examined King and found no mental illnesses. *See Segundo v. Davis*, 831 F.3d 345, 352 (5th Cir. 2016) ("Counsel should be permitted to rely upon the objectively reasonable evaluations and opinions of expert witnesses without worrying that a reviewing court will substitute its own judgment, with the inevitable hindsight that a bad outcome creates, and rule that his performance was substandard for doing so." (quoting *Smith v. Cockrell*, 311 F.3d 661, 676–77 (5th Cir. 2002))). Indeed, Dr. Quijano examined King, found no evidence of mental illness, and testified that King would pose less of a future danger because he did not have any mental illnesses that could cause irrational reactions. *Cf. Saldaño v. Davis*, -- F. App'x --, 2017 WL 2814386, at *8 (5th Cir. 2017) (per curiam) ("Reasonable jurists would agree that trial counsel's choice not to introduce mental health evidence or put [the defendant's mother] on the stand was reasonably strategic and therefore not deficient under *Strickland*."). Accordingly, jurists of reason could not debate whether King's trial counsel's performance fell outside of the wide range of

reasonable professional assistance.[14]   Thus, we deny a COA on this claim because King has failed to meet the second prong of the *Martinez/Trevino* exception.

## IV.  CONCLUSION[15]

For the foregoing reasons, we GRANT a COA in part on Claim 3.  King shall submit a brief on this claim within 30 days.  The State shall submit a response within 15 days thereafter.  We DENY a COA on King's other claims.

---

[14] To the extent that King argues that his trial counsel conducted an unreasonable investigation into his mental health by purportedly not discovering his history of depression, bipolar disorder, and suicide attempts, we reject this argument.  As noted above, King's trial counsel had King examined by two psychologists who both reached the same conclusion that King did not have any mental illnesses.  *See Segundo*, 831 F.3d at 352 ("Given trial counsel's investigation and reliance on reasonable expert evaluations, [the petitioner] cannot overcome the strong presumption that counsel's representation fell within the wide range of reasonable professional assistance.").  We also reject King's conclusory arguments that the district court erred in relying on King's trial counsel's affidavit on this point because other portions of that affidavit are purportedly false.

[15] King's fifth claim for relief is that the district court denied him due process and a fair hearing, which he supports by arguing that the district court's opinion closely copied or paraphrased the State's answer.  As an initial matter, it is unclear exactly what relief King is requesting.  Presumably, King is not claiming to be entitled to habeas relief because the district court did not provide him with due process and a fair hearing, and instead, he is requesting some sort of remand to allow further independent review by a district court.  In any event, we reject this claim.  As even King acknowledges, the district court did not just cut and paste from the State's answer.  It is true that the district court's opinion closely mirrors the State's answer in multiple places, but this simply shows that the State made persuasive arguments, not that the district court, as King claims, ignored its duty to make an independent evaluation of the claims.  Simply put, the circumstances of this case do not call into question whether the district court failed to independently evaluate King's claims in its 94-page opinion, and King has failed to show otherwise.  Accordingly, jurists of reason could not debate this claim, and we decline to issue a COA.