JERRY E. SMITH, Circuit Judge:
Carlos Trevino appeals the denial of ha-beas corpus relief on his claim of ineffective assistance of trial counsel (“LATC”). Because Trevino has not demonstrated that trial counsel’s performance in the punishment phase prejudiced him, we affirm.
I.
Trevino was convicted of capital murder for killing Linda Salinas. Further discussion of the factual background can be found in Trevino v. Thaler, 678 F.Supp.2d 445, 449-50 (W.D. Tex. 2009), and Trevino v. Davis, 829 F.3d 328, 332-33 (5th Cir. 2016). We recite only the facts needed to resolve the merits of the IATC claim regarding the mitigating evidence of fetal alcohol spectrum disorder (“FASD”), the claim on which we granted a certificate of appealability (“COA”).
A.
Before the punishment phase, Trevino’s counsel investigated the question of mitigation.
[Tjrial counsel attempted to find family members “that could give us some idea as to where or how Mr. Trevino grew up. What was going on in his life. What were the circumstances, you know, regarding his past. And we tried to find them, but really, I don’t think we came up with any witnesses. We tried to contact his mother as best we could. She was from out of the city.” Trial counsel retained an investigator to track down [Trevino’s] education records.... Trial counsel interviewed [Trevino’s] stepfather. [Trevino] failed to assist his trial counsel in identifying any family- members or others who may have provided mitigating testimony.
Trevino v. Stephens, No. SA-01-CA-306-XR, 2015 WL 3651534, at *11 (W.D. Tex. June 11, 2015). Trevino’s mother was the main connection to the evidence of FASD. Trevino’s trial counsel testified at the state *547 habeas hearing that Trevino’s “mother was aware of [his] trial but she refused to communicate with [his] defense counsel.” Id. at *11 n.35. That was not contested until 2003, when trial counsel stated in an affidavit that “I did know his mother was around but we never could connect. I believe she lived somewhere near Bastrop, Texas. I heard she was in the court house [sic] one time but I never did talk with her.”
Trial counsel ultimately put on a short presentation regarding mitigation. The district court’s original opinion summarized the evidence presented in the punishment phase as follows:
The prosecution presented evidence establishing (1) [Trevino] was first referred to the Bexar County juvenile probation office at age thirteen, (2) as a juvenile, [Trevino] was adjudicated on charges of evading arrest, possession of up to two ounces of marijuana, unauthorized use of a motor vehicle, and unlawfully carrying a weapon (identified as a nine millimeter handgun), and (3) [Trevino] was convicted as an adult of operating a motor vehicle while intoxicated, burglary of a vehicle, and burglary of a building. The jury also heard uncontra-dicted testimony establishing (1) [Trevino] had identified himself to a juvenile probation officer as a member of a street gang and (2) [Trevino] was a documented prison gang member whose body bore the tell-tale tattoos indicative of [his] membership in the violent prison gang La Hermidad y Pistoleros Latinos (“HPL”).
The defense presented a single witness, Trevino’s aunt, who testified (1) she had known [Trevino] all his life, (2) [his] father was largely absent throughout [his] life, (3) [his] mother “has alcohol problems right now,” (4) [his] family was on welfare during his childhood, (5) [Trevino] was a loner in school, (6) [Trevino] dropped out of school and went to work for his mother’s boyfriend doing roofing work, (7) [Trevino] is the father of one child and is good with children, often taking care of her two daughters, and (8) she knows [he] is incapable of committing capital murder.
On July 3, 1997, after deliberating approximately eight hours, [Trevino’s] jury returned its verdict at the punishment phase of trial, finding (1) beyond a reasonable doubt, there is a probability [Trevino] would commit criminal acts of violence which would constitute a continuing threat to society, (2) beyond a reasonable doubt [Trevino] actually caused the death of Linda Salinas or, if [he] did not actually cause her death, [he] intended to kill her or another, or [he] anticipated a human life would be taken, and (3) taking into consideration all of the evidence, including the circumstances of the offense, [Trevino’s] character and background, and [his] personal moral culpability, there were insufficient mitigating circumstances to warrant a sentence of life imprisonment be imposed upon [Trevino]. In accordance with the jury’s verdict, the state trial court imposed a sentence of death.
Trevino, 678 F.Supp.2d at 452-53.
Trevino’s initial collateral-review proceedings began with new appointed counsel while the direct appeal was ongoing. His initial- state habeas counsel brought IATC claims with respect to the penalty phase but did not include a claim that trial counsel had failed adequately to investigate and present mitigating circumstances. Trevino alleges in his second amended petition that his state habeas counsel’s petition included only “record-based claims” and that he conducted no independent mitigation investigation to uncover new evidence that might have lead him to con- *548 elude that he should bring an IATC claim on mitigation grounds.
B.
After Trevino’s state habeas petition had been denied by the Texas Court of Criminal Appeals, he filed a federal habeas petition, raising for the first time his claim that trial counsel had been ineffective in investigating and presenting mitigating evidence at the punishment phase.
The federal court stayed proceedings to permit Trevino to raise this claim in state court. The state court held that because Trevino had not raised this claim during his initial postconviction proceedings, he had procedurally defaulted the claim, and the Federal District Court then denied Trevino’s [IATC] claim. The District Court concluded in relevant part that, despite the fact that “even the most minimal investigation ... 'would have revealed a wealth of additional mitigating evidence,” an independent and adequate state ground (namely Trevino’s failure to raise the issue during his state postconviction proceeding) barred the federal habeas court from considering the [IATC] claim.
Trevino v. Thaler, — U.S. -, 133 S.Ct. 1911, 1916, 185 L.Ed.2d 1044 (2013). We affirmed on the same ground. The Supreme Court reversed, extending its holding in Martinez v. Ryan, 566 U.S. 1, 17, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), that ineffective assistance of state habeas counsel would excuse procedural default of IATC claims, to Texas, where “it [is] highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of [IATC] on direct appeal Trevino, 133 S.Ct. at 1921.
We remanded to the district court, where Trevino filed his second amended habeas petition. That court denied all ha-beas relief under that petition and refused to grant a COA, so Trevino sought a COA from this court.
[W]e grant[ed] [it] on the questions of whether the district court erred by: (1) concluding that Trevino failed to sufficiently plead cause to excuse his procedural default under Martinez/Trevino; (2) concluding that Trevino’s trial counsel’s performance was not deficient under Strickland, with respect to his failure to discover and introduce FASD evidence; and (3) concluding that Trevino’s trial counsel’s performance did not prejudice Trevino to the extent his counsel failed to investigate and present evidence, both expert and lay,' showing that Trevino suffers from FASD.
Trevino, 829 F.3d at 356. We now review the merits of those claims.[1]
II.
Trevino’s IATC claim was procedurally defaulted because he did not raise it in his initial state habeas petition. The procedural default may now be excused if he can demonstrate that his state habeas counsel was ineffective and the underlying IATC claim is substantial. Trevino, 133 S.Ct. at 1921. The substantiality of the underlying *549 IATC claim is based on the same standard for granting a COA. Martinez, 566 U.S. at 14, 132 S.Ct. 1309. We have already issued a COA on that issue, so we assume that requirement is satisfied. See Trevino, 829 F.3d at 356. We further assume, without deciding, that Trevino’s state habeas counsel was ineffective.
III.
Trevino’s IATC claim fails, because he has not shown that he was prejudiced by the mitigation investigation of his trial counsel.[2] To prove prejudice, “[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” [3] For mitigation-investigation claims, “we reweigh the evidence in aggravation against the totality of available mitigating evidence.” Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Our merits discussion is limited by the COA to “potential evidence of FASD,” including “lay witness testimony, such as personal and family history interviews relevant to a possible FASD diagnosis, that might otherwise have been excluded as character witness testimony” as to which a COA was denied. Trevino, 829 F.3d at 356.
Trevino has come forward both with evidence that he suffers from FASD and with additional lay testimony that he alleges would provide context for the FASD evidence. He has three experts who report that he suffers from FASD. Dr. Rebecca H. Dyer, Ph.D., is a clinical and forensic psychologist with Forensic Associates of San Antonio. She spent twelve and one-half hours interviewing Trevino and administering nine psychological tests. She also interviewed potential mitigation witnesses, including Trevino’s mother, and reviewed some of the federal habeas record. She determined that “his clinical presentation and the psychological test results are consistent with the characteristics of FAE.” His condition “would not have significantly interfered with his ability to know right from wrong, or to appreciate the nature and quality of his actions at the time of the capital offense.” But the effect of FASD “on his cognitive development, academic performance, social functioning, and overall adaptive functioning,” in combination with his difficult family history, “would ... have impacted any of Mr. Trevino’s decisions to participate in or refrain from any activities that resulted in his capital murder charges.... ”
Mitigation expert Linda Mockeridge interviewed seven witness and reviewed some of the record. She also reached the conclusion that Trevino demonstrated signs of FASD. She confirmed that Trevino’s mother drank heavily and that he suffered developmental delays, struggled in school, and was easily angered. She recommended additional testing be done on Trevino to determine the extent of the damage to his brain that she believed FASD had caused. Dr. Paul Conner, Ph. D., a clinical neurologist, was brought in to conduct some of the testing recommended by Mockeridge. In the email summary of his findings, Conner found that Trevino demonstrated deficiencies in eight cognitive domains, where only three are neces *550 sary for a diagnosis of FASD. He concluded that Trevino’s “daily functioning skills are essentially at a level that might be expected from an individual who was diagnosed with an intellectual disability.”
To contextualize his FASD evidence, Trevino includes affidavits from multiple family members with his second amended petition.[4] His mother, Josephine Trevino, discussed how she “would usually drink 18 to 24 cans of Budweiser, every day during [her] pregnancy with Carlos.” Trevino weighed only four pounds at birth and remained in the hospital until he gained weight. She explained that Trevino suffered significant injuries as a child, hitting his head on a piano and being hit by a car and thrown into a street light.
Janet ■ Cruz, Trevino’s ex-girlfriend, states that he was a good father and caring toward her, but was easily influenced by his friends. She also describes occasions on which Trevino was violent toward her. Cruz claims that he had physical altercations with both her and his mother, he once put a gun to Cruz’s head, he attempted to rape her at knife point, and she “was always fearful of him.” Peter Trevino, Trevino’s brother, alleges that he witnessed Trevino be physically violent toward Cruz, including choking her.
Robert Gonzalez, Trevino’s former employer, comments that Trevino “has never been involved in violence” and that he was a good worker that lacked initiative. Mario Cantu, an old friend of Trevino’s, states that he. was a follower arid “was a peaceful person and he was not violent.” But Cantu also acknowledges that he knew Trevino “had firearms and was part of a street gang,” and two weeks after he was released on parole Trevino went out with friends “getting high and drunk and robbing people.” Jennifer DeLeon, Trevino’s sister, describes the difficulty that he had in school, including repeating some grade years. His academic problems are also demonstrated in Dyer’s mitigation report.
This new mitigation evidence is insufficient to create a reasonable probability that Trevino would not have been sentenced to death had it been presented to the jury. Unlike in Wiggins, 539 U.S. at 537, 123 S.Ct. 2527, where the Court held trial counsel was ineffective, Trevino’s trial counsel did present mitigating evidence from Trevino’s life history. “Wiggins’ sentencing jury heard only one significant mitigating factor — that Wiggins had no prior convictions.” Id. Trevino’s trial counsel presented a mitigation witness, his aunt, who covered his mother’s alcohol problems, his absent father, his trouble in school, and the love he demonstrated toward her daughters. The prosecution presented aggravating evidence that he had a juvenile criminal record, adult convictions for DUI, burglary of a vehicle, and burglary of a building and had joined a violent prison gang.
We review that evidence along with all of the new evidence that Trevino has presented to determine whether the outcome of the punishment hearing was prejudiced. Id. at 534, 123 S.Ct. 2527. The mitigating evidence that Trevino suffers the effects of FASD would-be heard along with Cruz’s graphic testimony of Trevino’s violence toward her and Cantu’s testimony that he was involved in garig and criminal activity. The FASD evidence itself is also undermined by Dyer’s conclusion that Trevino’s FASD “would not have significantly interfered with his ability to know right from *551 wrong, or to appreciate the nature and quality of his actions at the time of the capital offense.”
This is a significant double-edged problem that was not present in Wiggins.[5] Jurors could easily infer from this new •FASD evidence that Trevino may have had developmental problems reflected in his academic problems and poor decisionmak-ing, but that he also engaged in a pattern of violent behavior toward both Cruz and Salinas that he understood was wrong. Taking all of the evidence together, we cannot say this new mitigating evidence would create a reasonable probability that the outcome of Trevino’s sentencing would have been different.
The judgment denying habeas relief is AFFIRMED.

. In granting the COA, we stated that not only were these issues debatable, but "reasonable jurists would agree that the district court erred” by dismissing Trevino's FASD claims. Trevino, 829 F.3d at 356. That statement is not binding on this panel, because a merits panel is not bound by a motions panel. See Newby v. Enron Corp., 443 F.3d 416, 419 (5th Cir. 2006). Furthermore, we cannot be bound by a merits holding in a COA decision, because "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners.” Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). We review Trevino’s petition on the merits unbound by the COA opinion’s observations on the merits.

. See Strickland v. Washington, 466 U.S. 668, 700, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.”).

. Id. at 694, 104 S.Ct. 2052.

. The district court acknowledged that several of the affidavits and reports attached to Trevino's second amended petition are unsigned and unauthenticated. Trevino, 2015 WL 3651534, at *7 n.4. In evaluating the mitigating evidence, the court decided to take into account those documents “[o]ut of an abundance of caution,” and we do the same. Id.

. Wiggins, 539 U.S. at 535, 123 S.Ct. 2527 ("Wiggins’ history contained little of the dou- , ble edge [the Court] ha[s] found to justify limited investigations in other cases.”). The Court cited Burger v. Kemp, 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987), and Darden v. Wainwright, 477 U.S. 168, 186, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), for examples of double edged evidence preventing a finding of prejudice. Wiggins, 539 U.S. at 535, 123 S.Ct. 2527. In Burger, the petitioner's new family history evidence included encounters with the police that had not been previously disclosed as well as evidence of his erratic, violent tendencies. Burger, 483 U.S. at 794, 107 S.Ct. 3114. In Darden, 477 U.S. at 186, 106 S.Ct. 2464, presenting mitigation evidence would have allowed the introduction of the petitioner’s prior convictions, including for rape, and a psychiatric report that determined he was capable of committing the crime. The double edge of Trevino's new evidence is analogous to these cases.