# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 14, 2018

Lyle W. Cayce
Clerk

No. 18-70006

STEVEN ANTHONY BUTLER,

      Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CV-2103

Before OWEN, HAYNES, and COSTA, Circuit Judges.

PER CURIAM:*

Steven Butler seeks a certificate of appealability (COA) to challenge his capital conviction as the result of ineffective assistance of counsel. His arguments are that his trial counsel failed (1) to present expert witnesses with important information indicating that he was incompetent to stand trial and (2) to investigate Butler's potential impaired intellectual functioning and

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-70006

competence and present that as mitigating evidence during the penalty phase of trial. We DENY the COA.

## I.     Background.

Butler confessed to a robbery spree that involved ten incidents in less than five months during which, in addition to robbery, he committed murders, attempted murders and rape.[1] He was eventually apprehended, arrested, and charged with capital murder based upon his fifth robbery, during which he shot and killed an unarmed woman. *Ex Parte Butler*, 416 S.W.3d 863, 867 (Tex. Crim. App. 2012) (per curiam).

Before trial, Butler corresponded with his trial counsel and exhibited some unusual behavior referencing "demons" and a non-existent person, "R. Palmer," who he seemed to rely upon for his actions. About a year after the first reference to "R. Palmer," Butler's trial counsel requested examinations to determine whether Butler was sane and competent. Two experts— psychiatrist Jaime Ganc and clinical psychologist Ramon Laval—each independently evaluated Butler on two different days in September 1988. The reports are similar, both premised only on the interviews with Butler. Each indicates information from Butler about his childhood, specifically that he was in an orphanage in Illinois and later adopted by the Butler family of Mississippi. The rest of the expert's comments are unremarkable except that each concluded, based on Butler's then-present cognitive functioning, that Butler was competent to stand trial.

---

[1] Butler's crimes and previous attempts at habeas relief are described by the Texas Court of Criminal Appeals, *see Ex parte Butler*, 416 S.W.3d 863 (Tex. Crim. App. 2012), *Butler v. State*, 872 S.W.2d 227 (Tex. Crim. App. 1994), and a previous decision of our court, *see Butler v. Stephens*, 625 F. App'x 641 (5th Cir. 2015) (per curiam). We recite here only the facts necessary to resolve Butler's current motion.

No. 18-70006

The record does not indicate that Butler's trial counsel took any further steps to challenge Butler's competency after receiving these reports. Butler stood trial about two months later, when a jury convicted him and sentenced him to death. He did not raise the issue of competency on direct appeal.

While pursuing state habeas relief, Butler's habeas counsel found letters from Butler to his trial counsel referencing "R. Palmer." He also realized that Butler's statements regarding his birth and his alleged time in an orphanage were inconsistent with testimony from Butler's parents at trial. They testified that Butler was born and raised in Mississippi to their family, not adopted after being born in Illinois. Additionally, Butler's new counsel noticed that Butler told Dr. Laval that he was sent to a mental ward at age 16, but he told Dr. Ganc that he had not had any previous psychiatric care.

Butler's new counsel identified other information, apparently not known to Butler's trial counsel, that he believed proved Butler was not mentally competent at the time of trial, including: Butler's use of drugs; reports from another inmate that Butler was "crazy" and talked to himself; reports from an attorney who represented him in a different criminal case that Butler was abusive and accused the attorney of conspiring with the government; a prison diagnostic report stated that Butler had a "dysphoric mood" and "sad affect," which indicated he was "a depressed, somewhat paranoid individual who has a high potential for harm to self or others" and may have psychosis (or be malingering); and Butler's extreme weight loss following his arrest.

Butler's new counsel contacted Drs. Ganc and Laval in 2002 to determine if their previous conclusions of competence still stood in light of the strange letters, Butler's false statements, and the other additional evidence. They had somewhat differing views from each other on the impact of this new information.

3

No. 18-70006

Dr. Ganc wrote that he could not modify his original opinion: "During my evaluation, according to my interpretation of my report, I did not feel there was any behavior or thinking that kept him from communicating with his counselor. This conclusion is stated in my report and I will stand by it."

Dr. Laval, however, was more equivocal. He noted that at the time of his evaluation, he "was not privy" to the information that Butler had accused his attorney of being a demon or that Butler had lied to Dr. Laval during the evaluation. For Dr. Laval, "collateral information suggesting that the defendant is manifesting paranoid thoughts or delusional ideas that involve his own attorney is of marked significance." He expressed concerns that "at the time that [he] conducted [his] evaluation of Mr. Butler in September of 1988, there was available information regarding his state of mind which would have been not only relevant but of paramount importance in reference to the issue of competency to stand trial." He believes that if he "reviewed and had been made aware of all that information," then it "is possible . . . [he] would have concluded that Mr. Butler was not competent and required psychiatric treatment, including the use of anti-psychotic medication, for his competency to be restored."

Butler's new counsel also contacted a third expert, psychiatrist Dr. George Woods, to re-assess Butler's history. Dr, Woods noted that Butler "suffers from a major mental illness, Bipolar Disorder" and that the Texas Department of Criminal Justice "has acknowledged these symptoms and attempted treatments of this illness since 1995." His report connected the information in the bullet points above to symptoms of Bipolar Disorder. Dr. Woods concluded that Drs. Ganc and Laval "had none of the information that had to be taken into account to make an accurate assessment of whether there were any problems in Mr. Butler's relationship with his lawyers and whether

those problems were due to mental illness." Dr. Woods went a step further and concluded that "Butler likely did not have capacity to cooperate with and assist his lawyers in his defense."

Armed with the new information and reports, Butler sought state habeas relief. Among his many arguments were two spurred by the information about Butler's competence. First, he argued that he was deprived of the right to counsel because his counsel was ineffective for failing to inform Drs. Ganc and Laval about Butler's erratic letters and lies during the evaluations. Second, he contended that his counsel was again ineffective for failing to raise the mental competency evidence during the punishment phase of trial to mitigate his sentence.

The circuitous route that those two issues have taken is described in depth in our previous opinion. *See Butler v. Stephens*, 625 F. App'x 641, 656–60 (5th Cir. 2015) (per curiam), *cert. denied*, 136 S. Ct. 1656 (2016). To make a long procedural history short, we concluded that Butler procedurally defaulted these issues in state court and the district court initially did not review the issues as barred. In light of intervening precedent, we vacated that decision and remanded, concluding that a subsequent Supreme Court decision, *Martinez v. Ryan*, may have provided a chance for Butler to overcome the procedural default. 566 U.S. 1 (2012).

On remand, the district court concluded that the default could not be excused under *Martinez* because Butler's arguments were "without merit." It denied a COA. Butler now requests that we grant him a COA on the two issues.

## II.   Standard of review.

Because no state court has previously considered the merits of Butlers' two arguments, our analysis of whether to grant a COA is based upon an

underlying standard of review that is de novo. *See Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014).

"To succeed on an [ineffective assistance of counsel] claim, a defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) the counsel's deficient performance prejudiced the defendant." *United States v. Fields*, 761 F.3d 443, 453 (5th Cir. 2014) (internal quotation marks omitted) (quoting, in part, *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000)). "The objective standard of reasonableness is measured under prevailing professional norms." *Id.* (internal quotation marks omitted) (quoting, in part, *Rompilla v. Beard*, 545 U.S. 374, 380 (2005)). "To prove prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Trevino v. Davis*, 861 F.3d 545, 549 (5th Cir. 2017) (brackets in original) (quoting *Strickland*, 466 U.S. at 694), *cert. denied,* 138 S. Ct. 1793 (2018). When a defendant asserts that his counsel was ineffective for failing to investigate mitigating evidence, "we reweigh the evidence in aggravation against the totality of available mitigating evidence." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

Because Butler only seeks a COA at this stage, his burden is lighter. Butler must demonstrate that his claims of constitutional violations were such that jurists of reason could debate the district court's disposition of the issues. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation marks omitted) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). If a district court denies a habeas petition on procedural grounds, we grant a COA "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that

jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Segundo v. Davis*, 831 F.3d 345, 350 (5th Cir. 2016) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  We are charged with reviewing the case only through this prism and thus must make only a general assessment of the merits. *Id.*; *see also Buck v. Davis*, 137 S. Ct. 759, 773 (2017).  In a death penalty case, doubts about granting a COA should be resolved in favor of a grant. *Escamilla v. Stephens*, 749 F.3d 380, 387 (5th Cir. 2014).

## III.　Discussion.

Butler argues that his trial counsel was ineffective in two ways.  First, he failed to provide critical information bearing on competency to the experts that evaluated him.  Second, he failed to investigate Butler's alleged impaired intellectual functioning and mental illness and then present evidence of it during the penalty phase of trial.  Though Butler defaulted on those issues in state court, we may review those claims if (1) Butler had a "substantial" claim that his trial counsel was ineffective and (2) at the initial-review collateral proceeding, the prisoner either had no counsel or counsel was ineffective. *Martinez*, 566 U.S. at 17.  We must therefore first address whether jurists of reason could debate that Butler's claim of ineffective trial counsel is "substantial."

### A. Presentation of evidence to experts regarding competency.

First, Butler argues that his trial counsel was ineffective because he failed to present certain information to the experts evaluating Butler for mental competency.  Criminal defendants may be tried only if mentally competent. *See Carter v. Johnson*, 131 F.3d 452, 459 (5th Cir. 1997).  Prisoners have sought habeas relief on the basis that their attorneys were ineffective by failing to challenge the prisoner's competence to stand trial. *See, e.g.*, *Moody v. Johnson*, 139 F.3d 477, 482–83 (5th Cir. 1998).  In a similar context, we have

held that attorneys may rely on the opinion of experts in assessing a defendant's mental health.  *See Segundo*, 831 F.3d at 352.   We do not appear to have addressed whether an attorney may rely on an expert's opinion when it is based on information the attorney knows (or should know) to be incorrect.

Even assuming a COA on the deficient performance prong under *Strickland* would therefore be appropriate, Butler must still show that jurists of reason would debate the district court's conclusion that he has not shown prejudice.  Under *Strickland*, a prisoner must not only prove that his counsel acted deficiently, he must also show that it affected the outcome of his conviction.  *See Trevino*, 861 F.3d at 549.   To prove mental incompetency at the time of trial, Butler would have had to produce evidence that he did not have either "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or a "rational as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *see also* TEX. CODE OF CRIM. PROC. ART. 46.02, § 1A (Vernon 1986).  Butler would have borne the burden of proving that he was incompetent at the time of trial, and currently bears the burden of demonstrating that jurists of reason would debate the issue of prejudice in this regard.  *See Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) ("[Habeas petitioner] bears the burden of proving both prongs [of *Strickland*] . . . ."); *Manning v. State*, 730 S.W.2d 744, 748 (Tex. Crim. App. 1987) ("[A] defendant has the burden of proving by a preponderance of the evidence, his incompetency to stand trial or his insanity at the time of the offense.").

Butler argues that his trial counsel should have "undertaken the investigation of Butler's mental illness" and "communicated the information that they would have found, together with their own experiences with Butler, to the court-appointed experts."  Butler argues there is a reasonable probability

that the experts would have come to a different conclusion and, in turn, "the trial court would have found Butler incompetent to stand trial."

Butler has not presented any competent evidence that supports his theory that the additional evidence would have changed the experts' opinions. Dr. Ganc firmly stated that his original assessment stood. Dr. Laval said only that "it is possible" that he could have concluded that Butler was incompetent.[2] Butler argues that this is sufficient to meet *Strickland*'s requirement that there be a "reasonable probability" that the outcome of his case would have been different. *Trevino*, 861 F.3d at 549. But jurists of reason would not debate that Dr. Laval's later equivocation about Butler's competency does not satisfy the prejudice standard. We have held that an expert opinion that is "perfectly equivocal" cannot "make any fact more or less probable and is irrelevant." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (affirming rejection of expert testimony that a fact was "as likely as not"). Dr. Laval's later testimony does not provide any trustworthy indication that the experts would have come to a different conclusion, much less that it would have resulted in a trial court declaring him incompetent to stand trial.

Consequently, we DENY a COA on Butler's first issue.

## B. Investigation of mental illness and impaired intellectual functioning.

Second, Butler argues that his trial counsel was ineffective for failing to more fully investigate Butler's alleged impaired intellectual functioning and mental illness. Had trial counsel done such an investigation, Butler believes he could have avoided the death penalty. His theory is that trial counsel could

---

[2] Butler also argues that Dr. Woods's report proves prejudice, but, as his briefing recognizes, his theory of prejudice requires showing that the original experts would have concluded he was incompetent. Here, we do not need to hypothesize about those experts' views because we have their testimony, which we examine here. To the extent Dr. Woods is an "uncalled witness," we address that below. *See infra* note 4.

have explained to the jury that the robberies, rape, and murders were the product of his mental illness amplified by impaired intellectual functioning, drug use, and desperation for money to fuel his new addiction. This supposedly would have disproved that the crime was "committed deliberately and with the reasonable expectation that the death of the deceased would result," a necessary prerequisite to Butler receiving the death penalty. We again conclude that no reasonable jurist would find fault with the district court's conclusion.

To begin with, Butler now relies on evidence that is too speculative to be of any use, despite having had decades to develop a theory and discover additional evidence. His entire theory comes from Dr. Woods's expert report. Dr. Woods's conclusions are hedged so thoroughly that they cannot provide any reliable basis for Butler's theory. The best he could say was that "Butler was likely feeding a growing drug addiction" and "likely developed a need for more money than he could earn," so he "could very well have turned to robbery as an alternative means of generating enough money to buy drugs." But Dr. Woods also reported that Butler sold marijuana and was employed in the oil industry, undermining his conclusion that Butler would quickly run out of money. Even more problematic is the total absence of evidence from Butler himself that the purpose of his crimes was to feed a drug addiction. If all Butler can now present in support of his theory is conjecture, reasonable jurists would not debate that the additional evidence would not have swayed the jury. *See McBride v. Johnson*, 122 F.3d 1067, 1997 WL 464545, at *6 (5th Cir. 1997) (unpublished) (concluding there was no prejudice for failing to investigate

mental health history and contest incompetency where the argument for incompetence was "based purely on speculation").[3]

Additionally, Butler's theory does not even begin to explain his ruthless and depraved crimes. We have denied a COA when the "severity of the offense" and an "apparent pattern of criminal activity" were so egregious that "additional mitigating evidence" would be insufficient to sway the jury. *Sorto v. Davis*, 672 F. App'x 342, 351 (5th Cir. 2016) (per curiam). Similarly, we denied a COA when "the aggravating evidence was overwhelming." *Guevara v. Stephens*, 577 F. App'x 364, 371 (5th Cir. 2014) (per curiam). No rational jury, after hearing about Butler's meticulously planned and despicably executed crimes, would be swayed by Butler's new theory, premised on the flimsiest of conjecture. For example, Butler cites Dr. Woods's report to argue that Butler's murders were likely a "defensive response that did not reflect deliberation or planning," which were triggered by a Bipolar-and-drug-induced paranoia. But that conclusion is at odds with Butler's meticulously planned crimes that included specific threats to kill people if they attempted to stop him, as well as the wholly gratuitous and violent sexual assaults. Butler's attempted connections from his crimes to his alleged mental illness are so attenuated that no reasonable jurist would conclude he suffered prejudice under *Strickland*. *See Nixon v. Epps*, 405 F.3d 318, 327–28 (5th Cir. 2005) (concluding that a prisoner failed to satisfactorily connect his mental illness to the commission of his crimes and thus failed to show prejudice).[4]

---

[3] "An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority. 5th Cir. R. 47.5.4." *Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006).

[4] The State also contends that Butler's argument is one of "uncalled witnesses," citing *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010), and *Day v. Quarterman*, 566 F.3d 527, 538–39 (5th Cir. 2009). When a habeas petitioner argues that his trial counsel was ineffective for failing to call a witness who would have introduced mitigating evidence, he must "name

No. 18-70006

No reasonable jurist would debate whether Butler was prejudiced by the lack of evidence regarding his mental health history.  We DENY a COA on Butler's second issue.

COA DENIED.

---

the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day*, 566 F.3d at 538.  Butler counters that his argument is one of failure to investigate, and he need only show "what the investigation would have revealed and how it would have altered the outcome of the trial." *Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000).  But Butler's entire theory is that had his trial counsel effectively investigated, he would have found an expert witness to testify of evidence regarding his mental illness. When the investigation is of that nature, we still follow the rules of uncalled witnesses.  *See Woodfox*, 609 F.3d at 808 ("Woodfox maintains . . . that counsel was ineffective for failing to obtain his own experts . . . . At bottom, Woodfox's claim is one of uncalled witnesses."); *Gregory v. Thaler*, 601 F.3d 347, 351–53 (5th Cir. 2010) (analyzing the investigation claim in light of the fact that he intended to present evidence through witnesses).  Jurists of reason would not debate that Butler cannot establish the requisites for a successful "uncalled witness" claim.